306 A.2d 186.

JAMES J. SOUSA *vs.* RICHARD CASEY *et al.*

JUNE 18, 1973.

PRESENT: Roberts, C. J., Paolino, Powers and Kelleher, JJ.

PAOLINO, J.  The plaintiff brought this civil action against the defendants alleging that on March 17, 1966, he sustained severe personal injuries while being arrested for an alleged motor vehicle violation.  The jury returned a verdict against each defendant in the sum of $4,500 and judgments thereon were entered in the Superior Court.  The case is here on appeal and cross-appeal filed by the defendants and plaintiff respectively.

The issues raised by the parties make necessary a rather detailed recital of the travel of this case.

On March 13, 1968, plaintiff filed a complaint in the office of the clerk of the Superior Court in Providence, pursuant to the provisions of G. L. 1956 (1969 Reenactment) §§9-5-20[1] and 9-1-12,[2] against " * * * John Doe, John Smith, John Jones, et al., fictitious names of certain police officers of the City of Providence * * * the true names and identity of said police officers being unknown to the plaintiff at this time."

The complaint further alleges that on March 17, 1966, plaintiff "was arrested by certain members of the Providence Police Department * * * (the names and identity

----

[1]General Laws 1956 (1969 Reenactment) §9-5-20, reads as follows:

"Writs and other process against unknown defendant.—Whenever the name of any defendant or respondent is not known to the plaintiff, the summons and other process may issue against him by a fictitious name, or by such description as the plaintiff or complainant may select; and if duly served, it shall not be abated for that cause, but may be amended with or without terms as the court may order."

[2]General Laws 1956 (1969 Reenactment) §9-1-12, reads as follows:

"When action is commenced for purposes of statute of limitations.— An action is commenced for purposes of the statute of limitations when the complaint is either filed with the court, deposited in the mail addressed to the clerk or delivered to an officer for service."

of said police officers being unknown to the plaintiff) for an alleged motor vehicle violation * * *" and that he " * * * was severely and unmercifully beaten by said members * * * who used excessive force in arresting * * * " for the alleged motor vehicle violation. The complaint also contains an allegation that plaintiff had sought to determine the names of the arresting officers on numerous occasions, but that such information had been withheld from him by the Providence Police Department.

On March 30, 1968, a special entry of appearance was filed on behalf of the persons named as defendants, together with a motion to dismiss the complaint on the grounds of lack of jurisdiction, insufficiency of process, and insufficiency of service of process. On May 14, 1968, an amended motion to dismiss was filed with an additional ground, namely, that there was a criminal complaint outstanding against plaintiff and that plaintiff, although aware of the same, refused to submit himself to the jurisdiction of the courts of this state.

On May 20, 1968, plaintiff first learned the names of defendants in this case by way of a deposition in a companion case entitled "James J. Sousa vs. David R. McGovern, in his capacity as Treasurer of the City of Providence, C.A. No. 68-1118." In that deposition Lieutenant Thomas R. Ryder of the Providence Police Department informed plaintiff of the names of these defendants. It also appears that in a prior deposition, C.A. No. 68-1118 held on April 11, 1968, Lieutenant Ryder, on advice of counsel for defendant, David R. McGovern, refused to furnish plaintiff with the names of the officers who had arrested plaintiff.

On May 23, 1968, plaintiff filed a motion to amend his complaint by substituting the real names of defendants for fictitious names used in the original complaint.

On June 6, 1968, a justice of the Superior Court heard plaintiff's motion to amend and defendants' motions to dismiss. He granted plaintiff's motion and denied defendants'

motions without prejudice to renewing the motions after defendants were served.

On June 7, 1968, plaintiff filed the amended complaint and on June 13 and 14, 1968, defendants were served with copies of the amended complaint and summonses.

The defendants filed motions to dismiss the complaint on the ground that it was not commenced within the statutory time prescribed in G. L. 1956 (1969 Reenactment) §9-1-14.[3] These motions were heard on October 3, 1968, and denied.

Each of the defendants then filed an answer containing two defenses. In the first they pleaded that they were without knowledge or information sufficient to form a belief as to the truth of the allegations contained in plaintiff's amended complaint. In the second they pleaded the statute of limitations. The answers were subsequently amended by adding a third defense, that the actions of defendants were justified as they were made pursuant to a lawful arrest.

The case proceeded to trial before a justice of the Superior Court and a jury. The defendants again renewed their motions to dismiss but they were denied. The plaintiff then moved for judgment on the pleadings in accordance with Super. R. Civ. P. 12(c). The trial justice denied this motion.

After the jury returned the verdicts, defendants filed a motion for a new trial, and plaintiff filed a motion for an additur or a new trial on the question of damages only. The trial justice denied defendants' motions. He granted plaintiff's motion for a new trial, unless defendants consented to an additur of $5,000.

---

[3] General Laws 1956 (1969 Reenactment) §9-1-14, reads as follows:

"Limitation of actions for words spoken or personal injuries.—Actions for words spoken shall be commenced and sued within one (1) year next after the words spoken, and not after. Actions for injuries to the person shall be commenced and sued within two (2) years next after the cause of action shall accrue, and not after."

The defendants did not file the additur. Instead they filed an appeal to this court from (1) the judgments on the verdicts, (2) the denial of their motion for a new trial, and (3) the granting of plaintiff's motion for an additur or a new trial on damages.

The plaintiff filed an appeal from (1) the order of the Superior Court denying his motion for judgment on the pleadings, and (2) from the order of the Superior Court denying that portion of his motion for a new trial on the question of damages only or in the alternative for an additur.

As we have previously stated, this action resulted from an incident involving plaintiff's arrest by defendant police officers for an alleged motor vehicle violation. The plaintiff testified in substance as follows. Shortly after midnight on March 17, 1966, he was operating his motor vehicle on Weybosset Street in Providence. At the intersection of Dorrance Street he stopped at a red traffic light and, while so stopped, became engaged in a conversation with the occupants of another motor vehicle. As a result of that conversation he wanted to get away from them. Afraid of bodily harm from the occupants of the other car, when the light turned green he proceeded down Weybosset Street along a route which took him to North Main Street. The other vehicle was following him. He had to stop at another red light. When this light changed to green he proceeded at a speed of up to 45 to 60 miles per hour for a distance of approximately one-half mile along North Main Street until he noticed what appeared to be a police car. He kept on going, beginning a high-speed flight along streets which he did not know, to avoid being apprehended by the police officers who were then chasing him.

His flight ended at the entrance to Swan Point Cemetery where plaintiff testified he stopped his auto, saw the police car 200 or 300 feet away, turned off his motor and his lights.

Then, hearing what he described as a hissing sound, he got out of his car and knelt down beside his right rear tire to see if the tire was leaking air. At this point the police car entered the cemetery driveway in a position facing his car, and then the police left their car and went into the woods nearby, looking for him. The next thing he knew he heard voices coming from the woods.

The plaintiff's testimony continues as follows. Deciding that this might be an opportunity to "just get away from it all," he re-entered his auto, started his motor and was "just getting ready to roll" when his path was blocked by another police vehicle. As the police approached he reached into the glove compartment for his automobile registration. Upon being told to get out of the car by the police, he managed to get about three quarters of the way out when he was pulled the rest of the way by the police, pushed over the hood of the police cruiser, handcuffed with his hands behind his back and taken to a grassy area, to the right of his car, where he received two sharp stings on the top of his head and then punched in the face "just as fast as they could punch me" for a period of 30 to 40 seconds. He testified that his head was cut open in two places, he had blood running down his face, his eye was swollen, his nose was fractured, and the whole side of his face and his nose was bleeding. After this happened the police said "this kid has to go to the hospital" and then he was taken to the rear of the patrol wagon and pushed into it in such a way that he had to lie on the floor of the wagon for the trip from the cemetery to the Rhode Island Hospital where he was treated and subsequently admitted as a patient.

The plaintiff introduced the hospital records from the Rhode Island Hospital and Massachusetts Eye and Ear Infirmary, which described the treatment he received at those institutions. He also testified regarding his injuries and said that he experienced pain across his chest and in his

head and nose during the first two weeks of his stay at the Rhode Island Hospital.

Doctor Robert S. L. Kinder, a practicing opthalmologist, who appeared for plaintiff, described the injury to plaintiff's eye and the operation which was required to repair the detached retina which he suffered. On cross-examination he stated that the hospital records disclosed no complaints of pain by plaintiff during his stay at the Rhode Island Hospital.

The defendants testified after being called by plaintiff under the adverse witness statute and also when called in the presentation of their own defense. Officer Joseph Mulcahey, the driver of the vehicle in which defendant Brown was riding, also appeared for defendants. Officer Mulcahey and defendants Brady and Brown testified about the chase of plaintiff's vehicle.

Officer Mulcahey testified that plaintiff was first seen coming out of Industrial Drive onto North Main Street at a high rate of speed; that plaintiff proceeded along North Main Street, slowed down momentarily, and then proceeded at a high rate of speed through a red traffic light; and that upon seeing this, a high-speed chase of plaintiff followed, through a number of city streets. The chase came to an end at the entrance to Swan Point Cemetery, where Mulcahey and Brown pulled up behind plaintiff's parked car. They got out of their vehicle and went directly to plaintiff's car, but finding no one there, they assumed that the driver had fled into the nearby woods. They both proceeded to enter the woods, looking for plaintiff. The defendant Brady followed them from some distance behind.

Officer Philip Brady was sent to request further assistance, while Mulcahey and Brown continued their search. Hearing a voice say "We got him," Mulcahey and Brown came out of the woods and saw a person, later determined

to be plaintiff, struggling with defendants Brady and Casey.

Officer Brady testified that when he came out of the woods he saw plaintiff and Casey struggling on the ground and that he went to assist Casey.

The defendant Casey testified in substance as follows. He had not taken part in the chase, but heard about it on the radio. He then took a position at a certain intersection and remained there until he heard that the car being chased had been abandoned at the main entrance to Swan Point Cemetery. He then proceeded to that location and arrived just as plaintiff was about to leave the area. He pulled up to plaintiff's car, in order to block its route of exit, when plaintiff and Casey got out of their respective cars. The plaintiff ran toward a grassy area, with Casey in pursuit. At this point, plaintiff turned and swung at Casey. Casey struck plaintiff twice with a blackjack on the top of the head and then the two struggled to the ground. While they were struggling, Brady came to Casey's assistance.

The defendant Brown and Officer Mulcahey testified that, as they emerged from the woods, they saw plaintiff and Casey and Brady struggling; that they went to assist in subduing plaintiff, which involved forcefully taking him to the police cruiser where plaintiff was handcuffed; and that then plaintiff was put into the police wagon and taken directly to the Rhode Island Hospital.

I

We consider first defendants' contention that the Superior Court erred in denying their motion to dismiss this action prior to trial. They argue that G. L. 1956 (1969 Reenactment) §9-5-20, as amended by P. L. 1965, ch. 55, sec. 13, does not apply to the facts of this case and that consequently the amended complaint naming them as defendants and the summonses served upon them were issued and filed after the applicable two-year statute of limi-

tations had expired. In the circumstances, they claim the Superior Court should have granted the motions to dismiss, which were filed prior to the amendment of the original complaint naming them as defendants, on the grounds of lack of jurisdiction. We do not agree. We hold that §9-5-20 is applicable here.

At the January session, 1965, the General Assembly amended P. L. 1965, ch. 55, an act for simplification of practice and procedure in civil actions. In ch. 55, sec. 6 (now §9-1-12), it changed the method of commencing a law suit for the purposes of the statute of limitations from the issuance of a writ to the filing of a complaint with the clerk, or the depositing of the complaint in the mail addressed to the clerk, or the delivery of the complaint to an officer for service. See *note* 2. At the same time the General Assembly, in ch. 55, sec. 13, amended G. L. 1938, ch. 514, sec. 17[4] (now §9-5-20) by substituting the words "summons and other process" for the word "writ." See *note* 1.

It is clear that the words "other process" in §9-5-20 mean "complaint" because the use of a "complaint" is the method established by the Legislature to commence an action. In this same statute it amended the unknown defendant statute by substituting the words "summons and other process" for the word "writ."

Section 9-5-20 further provides that the "summons and other process" must be duly served and that it may be amended with or without terms as the court may order. However, there is nothing in our statute which says that the service must be made within the statute of limitations.

---

[4]General Laws 1938, ch. 514, sec. 17 read as follows:

"Whenever the name of any defendant or respondent is not known to the plaintiff, the writ may issue against him by a fictitious name, or by such description as the plaintiff or complainant may select; and if duly served, it shall not be abated for that cause, but may be amended with or without terms as the court may order."

Service must be made within a reasonable time after a complaint has been filed, absent a showing by the plaintiff that such delay was excusable. *See Caprio* v. *Fanning & Doorley Constr. Co.*, 104 R. I. 197, 199-200, 243 A.2d 738, 740 (1968).

For convenience we summarize the important events in this case. On March 17, 1966, plaintiff sustained the injuries he now complains about. He knew that members of the Providence Police Department inflicted these injuries, but he did not know their names. On March 13, 1968, he filed the original complaint against unknown defendants pursuant to the provisions of §9-5-20. The complaint alleges that the names and identity of the police officers were unknown to plaintiff and that although he had sought to determine the names of the officers on numerous occasions, such information had been withheld from him by the Providence Police Department. The defendants presented no competent evidence to contradict this allegation. In the circumstances plaintiff had the right under §9-5-20 to file the complaint against unknown defendants.

On May 23, 1968, after he alleges he learned the names of defendants, he filed a motion to amend the complaint by inserting the names of the defendants in place of the fictitious names used in the original complaint. On June 6, 1968, the Superior Court granted this motion, as it had the authority to do under §9-5-20. Service of the amended complaint was made on defendants on June 13 and 14, 1968, which was, in our judgment, within a reasonable time. Since the filing of the complaint on March 13, 1968 tolled the statute of limitations and since the summonses and complaint were duly served, the Superior Court did acquire jurisdiction over defendants within the period of the statute of limitations and, therefore, defendants' motion to dismiss this action prior to trial was properly denied.

The question of whether §9-5-20 is applicable here has raised a question of first impression in this state. We have decided this issue on the basis of our own statute. The California cases[5] cited by defendants not only differ factually from the case at bar, but they rest on statutory provisions which also differ from ours. In the circumstances we do not deem it necessary to discuss them here.

## II

The defendants' next contention is that, in passing on their motion for a new trial, the trial justice failed to comply with the guidelines set forth in *Dawson v. Rhode Island Auditorium, Inc.,* 104 R. I. 116, 242 A.2d 407 (1968). We do not agree.

It is true, as defendants state, that the portion of the trial justice's decision relating to the question of liability is brief, but it is fair to infer from what the trial justice said in discussing this issue that defendants did not argue this issue strenuously and that they were interested in the question of damages. In referring to the question of liability the trial justice said:

> " * * * in fact I don't think he argued at all, what he was primarily interested in is question two and question three as to the amount, interested in the amount that the Defendants would be liable to the Plaintiff."

The real issue in this case is whether defendants used more force than was reasonably necessary in arresting plaintiff. *See Williams* v. *Altruda,* 74 R. I. 47, 58, 58 A.2d 562, 568 (1948).

The testimony on this issue was conflicting and it is fair to assume that the jury accepted plaintiff's version of what happened on this question. In referring to this question the trial justice said:

---

[5]The cases cited are:
*Lipman* v. *Rice,* 213 Cal.App.2d 474, 28 Cal. Rptr. 800 (1963);
*Schroeter* v. *Lowers,* 260 Cal.App.2d 695, 67 Cal. Rptr. 270 (1968);
*Rosencrantz* v. *Rogers,* 40 Cal. 489 (1871).

"There is no question there was ample evidence to support the jury's verdict on the question of liability against all three Defendants. Strong evidence that all parties participated, they all used more than reasonable force to subdue the Plaintiff."

Then, after describing the chase by the police, he said:

" * * * there is no evidence that the Plaintiff had a gun on him or was armed in any manner, yet he received unusual injuries as a consequence of the three police officers attempting to subdue him."

The fact that his decision on the issue of liability was brief and that he did not elaborate on the specific testimony on which he relied in denying defendants' motion is not fatal. As this court said in *Turgeon* v. *Rocks*, 96 R. I. 353, 356, 191 A.2d 606, 607 (1963):

"In passing upon a defendant's motion for a new trial, the trial justice while required to state the reasons for his decision is given a wide latitude with respect to the form in which such reasons are stated and in the ordinary case he is not required to set them out at length in any express terms."

In arguing that the trial justice failed to perform his duty in passing on their motion for a new trial, defendants refer to the trial justice's statement that although defendants claimed that plaintiff was the aggressor no charge of assault and battery was brought against him by defendants. It appears from the decision that this statement was made after the trial justice had concluded that there was ample evidence to support the jury's verdict. In fact, he indicated that this was not important and that it was collateral matter. In the circumstances we find no merit in defendants' argument that this statement by the trial justice constitutes reversible error.

We are satisfied that in passing on the issue of liability, the trial justice complied with the rules governing a trial justice in passing on a motion for a new trial. It is clear from his decision that he, like the jury, accepted plaintiff's

testimony, and rejected defendants', on the question of whether defendants used more force than was reasonably necessary in arresting plaintiff. On an appeal from an adverse ruling on a motion for a new trial in cases where the trial justice has performed his duty, the appellant (defendants here) must persuade this court that the trial justice in deciding the motion was clearly wrong or overlooked or misconceived material evidence on a controlling issue. *Dawson* v. *Rhode Island Auditorium, Inc., supra.*

In the case at bar defendants have failed to persuade us that the trial justice overlooked or misconceived any material evidence or that he was otherwise clearly wrong. Their argument that his failure to mention the Rhode Island Hospital report in his decision means that he overlooked it is without merit. That report contains entries which are consistent with his finding that plaintiff sustained serious injuries. In the circumstances we cannot disturb his decision insofar as it relates to the question of liability.

Other contentions made by defendants, though not specifically referred to, have been considered by us and found so lacking in merit as to require no discussion.

### III

We come now to the questions raised by plaintiff in his appeal. The plaintiff argued that the trial justice erred in denying his motion for judgment on the pleadings on the question of liability under Super. R. Civ. P. 12(c). However, inasmuch as the jury returned a verdict for plaintiff, and defendants' appeal from the judgments accordingly entered has been denied and dismissed, plaintiff's contentions regarding the trial justice's denial of his motion for judgment on the pleadings became academic and require no further discussion.

## IV

The plaintiff next contends that in passing on his motion for an additur the trial justice erred in interpreting the jury's verdict to be one verdict in the amount of $4,500 and in applying the law of joint tortfeasors to this case. We do not agree.

Before discussing the specific arguments made by plaintiff on this question we address ourselves to the law generally governing situations such as the one present here.

It is generally well settled that in a civil action for assault or battery, where two or more defendants are found liable, their liability is joint and several and the suit may be maintained against any one or all of them. There can be but one verdict for a single sum against all who are found guilty of the tort. *Marriott* v. *Williams*, 152 Cal. 705, 711, 93 P. 875, 878 (1908); *see also Toone* v. *Adams*, 262 N.C. 403, 137 S.E.2d 132 (1964); *Warren* v. *Westrup*, 44 Minn. 237, 46 N.W. 347 (1890). For a general discussion of this question *see also* 6 Am.Jur.2d, *Assault and Battery*, §127 (1963) and Prosser, *Torts*, §§43-48 at 258-81 (3d ed. 1964).

We come now to the facts in the case at bar on which plaintiff bases this argument. In his instructions to the jury, to which no objection was made, the trial justice charged that these were three civil actions, that the plaintiff could recover from any one or more of the defendants, and that the jury must bring in three separate verdicts because these were three separate defendants. He also charged:

> " * * * if you find for the Plaintiff you must all unanimously agree as to one sum for the Plaintiff and having determined the amount you assesss the same amount against the Defendant or Defendants."

In passing on plaintiff's motion for an additur the trial justice stated that plaintiff was entitled to recover no more than the sum of $4,500 plus interest and that whether he

collected it from one defendant or a portion from all the defendants was not for the court to pass upon. After referring to the instructions he gave on the question of damages, he said:

> " * * * this Court handled this matter as a joint tort feasor, three of them, if liable, would be liable jointly towards the Plaintiff, so the Court's conclusion on the jury's verdict is that the sum, the Plaintiff can only recover the sum of $4,500 against all of the Defendants and not a total sum of $13,500 against all Defendants."

The plaintiff contends that the trial justice did not, in his instructions to the jury, treat these cases as a joint tortfeasor situation and that in fact and in law he could not have so treated them. He argues in substance that our Joint Tortfeasors Act, G. L. 1956, ch. 6 of title 10, applies only to joint tortfeasors charged with negligence and not to a case such as this which involved assault and battery.

We shall consider the latter contention first. There is no merit to plaintiff's claim that the Joint Tortfeasors Act applies only to cases involving negligence. The very nature of the Act refutes this claim — the act involves contribution among joint tortfeasors. There is nothing in the language of §10-6-2[6] excluding assault and battery, which are torts, from the Act. See Prosser, *Torts*, §§9, 10 at 34-41 (4th ed. 1971). Since plaintiff is suing all defendants "for the same injury," and not for separate or different injuries, we hold that the Joint Tortfeasors Act is applicable here.

The record does not support plaintiff's argument that the trial justice did not treat these cases as a joint tortfeasor situation in his instructions to the jury. A reading of his charge as a whole shows the contrary to be true. It would

---

[6]General Laws 1956 (1969 Reenactment) §10-6-2 defines joint tortfeasors as follows:

"For the purposes of this chapter the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."

unduly prolong this opinion to discuss his charge in detail. We are satisfied from what we have read that nothing he said, when read in the context of the entire charge, could be construed to mean that plaintiff could collect more than one sum as damages.

Nor is there any merit to the plaintiff's argument that the trial justice was in error in interpreting the jury's verdict to be one verdict against all the defendants as joint tortfeasors. The same is true of his argument that on the basis of the instructions given, the jury felt that if they brought in three separate verdicts of $4,500 each against each defendant, plaintiff would be entitled to $13,500. This argument is purely speculation and not supported by this record.

The appeal of the defendants is denied and dismissed, the cross-appeal of the plaintiff is denied and dismissed, and the case is remitted to the Superior Court for a new trial on the question of damages only unless the defendants shall, on a date to be fixed by the Superior Court, file in the office of the clerk of that court an additur of $5,000. If such additur is filed, the Superior Court is directed to enter judgmentment for the plaintiff on the verdicts as raised by the additur.

Mr. Justice Powers participated in the decision but retired prior to its announcement. Mr. Justice Joslin and Mr. Justice Doris did not participate.

*Clifford J. Cawley,* for plaintiff.

*Robert J. McOsker,* City Solicitor, *David J. Kehoe,* Asst. City Solicitor, for defendants.