**David Howard WESTFALL, in his capacity as Administrator of the Estate of Thomas Howard Westfall, and in his capacity as Administrator of the Estate of Betty E. Westfall**

v.

**WHITTAKER, CLARK & DANIELS, METROPOLITAN TALC CO., INC. Pfizer, Inc., Omya, Inc. and Windsor Minerals, Inc.**

C.A. No. 79–0269B.

United States District Court, D. Rhode Island.

Sept. 7, 1983.

---

R. Daniel Prentiss, Providence, R.I., for plaintiff.

Benjamin V. White, III, Providence, R.I., Edward Leibensperger, Nutter, McClennan & Fish, Boston, Mass., for defendant Windsor Minerals, Inc.

Michael G. Sarli, Robert W. Lovegreen, Providence, R.I., for defendant Whittaker, Clark & Daniels.

John F. Dolan, Providence, R.I., for defendant Omya, Inc.

William A. Curran, Providence, R.I., for defendant Metropolitan Talc Co., Inc.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

This civil action is presently before the Court on objections of the Plaintiff and Defendant Windsor Minerals, Inc. (hereinafter Windsor) to the Magistrate's report and recommendations as to the Motions for Summary Judgment of Defendant Omya, Inc. (hereinafter Omya) and Defendant Windsor. The Magistrate recommended that Defendant Omya's Motion for Summary Judgment be granted, and that Defendant Windsor's be denied. The issue, pared down to its simplest form, is whether Plaintiff's claims against these two Defendants are time barred.

A brief chronology of the pleadings is necessary to an understanding of the ques-

tions presented. On May 24, 1979, Thomas Howard Westfall and his wife, Betty E. Westfall, commenced this action to recover damages for pleural mesothelioma, a form of lung cancer caused by exposure to asbestos. Mr. Westfall alleged that he contracted the disease as a result of his inhalation of talc from 1946 to 1975, when he worked at the Uniroyal, Inc. plant in Providence, Rhode Island. Jurisdiction is based on diversity of citizenship. The original Defendants were Whittaker, Clark & Daniels (an alleged supplier of talc to Uniroyal), and "John Doe Corporation." Less than two months later, on July 10, 1979, Mr. Westfall died of pleural mesothelioma. July 10, 1979 was also the date on which Defendant Whittaker, Clark & Daniels filed a third-party complaint against Metropolitan Talc Company, Inc. and Pfizer, Inc.

On November 1, 1979, an amended complaint was filed substituting Betty Westfall, in her capacity as administratrix of her husband's estate, as named Plaintiff, and adding Metropolitan Talc Company, Inc. and Pfizer, Inc. as Defendants. Like the original complaint, the first amended complaint included three counts against "John Doe Corporation." Shortly thereafter, on November 17, 1979, Mrs. Westfall died and a second amended complaint was filed by the Westfalls' son, David Howard Westfall, in his capacity as administrator of the estates of his parents, as named Plaintiff in the action.

On May 24, 1982, Plaintiff again moved to amend his complaint. This motion was granted on June 14, 1982, and on June 18, 1982 the third amended complaint added Defendants Windsor Minerals, Inc. and Omya, Inc., and eliminated all references to "John Doe Corporation."

As the first of many arguments, both Windsor and Omya assert that the Rhode Island wrongful death statute in force at the time of Mr. Westfall's death applies to bar Plaintiff's action against them. Mr. Westfall died on July 10, 1979. At that time, the last sentence of R.I.Gen.Laws § 10–7–2 read, in pertinent part: "Provided, that every such action shall be com-

menced within two (2) years after the death of such person[.]" R.I.Gen.Laws § 10–7–2 (1969 Reenactment). Windsor and Omya were added as Defendants in this action on June 18, 1982, more than two years after Mr. Westfall's death.

■ On May 12, 1981, before the two-year statutory period had run on Plaintiff's cause of action, R.I.Gen.Laws § 10–7–2 was amended, changing the limitations period from two years to three years. See 1980 R.I.Pub.Laws ch. 198, § 1. Plaintiff contends that this amendment applies retroactively, permitting the filing of an action up to three years after a decedent's death. If Plaintiff's contention were to prevail, no further inquiry would be necessary since Windsor and Omya were added as Defendants within three years of Mr. Westfall's death. Based on Rhode Island law, however, this Court finds that the May 12, 1981 amendment to the wrongful death statute cannot be applied retroactively.

The general rule applicable to all statutes of limitations with regard to the issue of retroactivity is "well-settled in Rhode Island." *Skaba v. Capasso,* 117 R.I. 512, 514, 368 A.2d 570, 571 (1977). In *Fiske v. Briggs,* 6 R.I. 557 (1860), the Rhode Island Supreme Court noted that "the general doctrine to be gathered from the decisions, both English and American, is, that the courts consider the language of these statutes of limitation, and make them retrospect, or otherwise, as the intention of the legislature is to be gathered from their language. . . ." *Id.* at 563–64. In *Rotchford v. Union Railroad Co.,* 25 R.I. 70, 54 A. 932 (1903), the court followed what it acknowledged to be "a familiar rule of construction that statutes of limitations are held to be prospective only in their operation, unless by their express terms or by necessary implication they shall be held to express the legislative intent that a retroactive effect is to be given to them." *Id.* at 72, 54 A. at 933. The "general doctrine" referred to in *Fiske,* and the "familiar rule of construction" referred to in *Rotchford* must still be applied to questions of retroactivity in the interpretation of Rhode Island

statutes of limitations. *See Skaba v. Capasso,* 117 R.I. at 514, 368 A.2d at 571; *Twomey v. Carlton House of Providence, Inc.,* 113 R.I. 264, 268, 320 A.2d 98, 100 (1974); *Hester v. Timothy,* 108 R.I. 376, 382, 275 A.2d 637, 640 (1971).

Furthermore, the law in Rhode Island is equally clear with respect to the statute of limitations for wrongful death actions. As summarized by the First Circuit in *Cadieux v. International Telephone & Telegraph Corp.,* 593 F.2d 142 (1st Cir.1979):

> the Rhode Island Supreme Court has consistently refused to read exceptions into the statute of limitations, reasoning that the time limit is a condition on the existence of a legislatively created cause of action unknown to the common law and therefore not subject to judicial alteration or expansion. *Short v. Flynn* [118 R.I. 441], 374 A.2d 787 (R.I.1977); *Nascimento v. Phillips Petroleum Co.,* 115 R.I. 395, 346 A.2d 657 (1975); *Tillinghast v. Reed,* 70 R.I. 259, 38 A.2d 782 (1944).

*Id.* at 144. The First Circuit's analysis is undoubtedly correct in light of a Rhode Island Supreme Court memorandum decision one year later in which the court cited *Short v. Flynn,* and *Tillinghast v. Reed,* stating:

> we are of the opinion that in a wrongful death action, the two year period within which the action must be brought constitutes a condition of limitation upon the created right itself and not merely a limitation affecting the remedy. The statute permits of no exception to this requirement.

*Santelle v. Miriam Hospital,* 414 A.2d 191, 191 (R.I.1980).

Turning to the 1981 amendment then, it is first necessary to examine the language used in order to determine whether by "express terms" or "necessary implication" it was intended to apply retroactively. R.I. General Laws § 10–7–2, as amended on May 12, 1981, reads thus:

> *Action by executor or administrator— Persons benefited—Commencement of action—Minimum recovery*—Every such action shall be brought by and in the name of the executor or administrator of such deceased person, whether appointed or qualified within or without the state, and the amount recovered in every such action shall one-half (½) thereof go to the husband or widow, and one-half (½) thereof to the children of the deceased, and if there be no children the whole shall go to the husband or widow, and if there be no husband or widow, to the next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate. Provided, that every such action shall be commenced within three (3) years after the death of such person; and provided, further, whenever any person or corporation is found liable under 10–7–1 to 10–7–4, inclusive, he or it shall be liable in damages in the sum of not less than twenty-five thousand dollars ($25,- 000).

1980 R.I.Pub.Laws ch. 198, § 1.

Clearly, there is no express language in this amended version of the statute to make it retroactive. Plaintiff argues, however, that the statute necessarily implies retroactive application. The thrust of Plaintiff's argument is that because the amendment does not use words such as "after the cause of action *shall* accrue," or "after such person *shall* die," it should not be held to apply prospectively only. In support of this proposition, Plaintiff cites *Fiske v. Briggs,* 6 R.I. 557 (1860), *Rotchford v. Union Railroad Co.,* 25 R.I. 70, 54 A. 932 (1903), and *Twomey v. Carlton House of Providence, Inc.,* 113 R.I. 264, 320 A.2d 98 (1974).

At issue in *Fiske* was whether the statute of limitations for an action of debt upon a judgment was retroactive. The statute provided that such actions shall be commenced and sued "within twenty years, next after the cause of said action." 6 R.I. at 562. The court held that "there was nothing in this language to indicate a purpose to confine the operation of this act to causes of action which should accrue after the passage of the act," and distinguished the statutory language from that in "*Williamson v. Field,* ..., 'after such action

*shall* accrue,' which was held in that case to refer to such action as should thereafter accrue[.]" (emphasis by the court) *Id.* at 562–63.

In *Rotchford,* a newly enacted statute of limitations for personal injury actions provided that "[A]ctions of the case for injuries to the person shall be commenced and sued within two years next after the cause of action *shall accrue,* and not after." (emphasis added) 25 R.I. at 70, 54 A. at 932. Based in part on the legislature's use of the words "shall accrue" and the fact that the *Fiske* court had emphasized such a distinction, the court held that the statute in question was prospective only in operation. *Id.* at 72–73, 54 A. at 933.

Plaintiff also relies on *Twomey,* in which the 1971 amendment to the statute of limitations affecting injuries to the person was in question. In *Twomey,* the trial justice had held that the 1971 amendment, which enlarged the two-year limitation period to three years, did not apply retroactively. *Id.* 113 R.I. at 266, 320 A.2d at 99. The express language used by the legislature to describe the new limitations period was "within three (3) years next after the cause of action *shall accrue*[.]" (emphasis added) *Id.* *See* 1971 R.I.Pub.Laws ch. 200. Citing *Fiske* and *Rotchford,* and noting that the 1971 amendment included an express provision that it would not apply retroactively, the *Twomey* court upheld the trial justice's determination that the amendment operated prospectively only. *Id.* at 268, 320 A.2d at 99–100.[1]

While Plaintiff's argument that the 1981 amendment does not use such words as "after the cause of action shall accrue" and

hence should apply retroactively is an appealing one, it fails to take into account the important distinction that the Rhode Island Supreme Court has consistently made between wrongful death actions and causes of action that were known at common law. The causes of action at issue in *Fiske* (action of debt on a judgment), *Rotchford* (personal injury), and *Twomey* (personal injury) were not created by statute, but were known at common law. In fact, the court in *Twomey* pointed out this distinction in a footnote, indicating that had the cause of action been created by statute, it would have presented an entirely different issue than that before the court. *See* 113 R.I. at 269–70 n. 5, 320 A.2d at 101 n. 5.

In *Tillinghast v. Reed,* 70 R.I. 259, 38 A.2d 782 (1944), the Rhode Island Supreme Court characterized the wrongful death statute as one which created an entirely new right of action that did not exist at common law, and held that the limitations period was a condition imposed upon the right of action, providing for "no exception as to the time within which the action shall be commenced." *Id.* at 264–65, 38 A.2d at 783–84. The court reiterated this position in *Nascimento v. Phillips Petroleum Co.,* 115 R.I. 395, 346 A.2d 657 (1975), and held further that "the provisions of § 10–7–2 providing that 'every such action shall be commenced within two (2) years after the death of such person' are clear and unequivocal and require no further interpretation or construction by us." *Id.* at 399, 346 A.2d at 659. *See also Dempsey v. State,* 451 A.2d 273, 273 (R.I.1982) (subsequent change to amount or elements of damage in wrongful death statute is substantive and must be applied prospectively only).[2] Accordingly,

---

1. Although the plaintiff's action in *Twomey* was barred by the statute of limitations in effect when it was commenced, the court ultimately sustained plaintiff's appeal on the basis of a 1973 amendment to the statute. 113 R.I. at 273, 320 A.2d at 103. The court held that "the manifest legislative intent to give retroactive effect to the limitations enlargement requires us to adjudicate the case according to the law now existing, and the prior judgment, although correct when rendered, must therefore be set aside." *Id.,* 320 A.2d at 103.

2. Plaintiff submits that the cases of *Menna v. Mathewson,* 48 R.I. 310, 137 A. 907 (1927) and *Britto v. Fram Corporation,* 93 R.I. 426, 176 A.2d 81 (1961) undercut the strength of the Rhode Island Supreme Court's traditional characterization of wrongful death actions as created by statute, and the court's consequent refusal to apply amendments to the statute retroactively. In *Menna,* the Rhode Island Supreme Court held that the Workmen's Compensation Act created a right of action, and the time within which a suit must be brought operates as a limitation on the right itself, and not just

the 1981 amendment to the Rhode Island wrongful death statute does not apply retroactively.

Plaintiff next argues that the 1982 amendment to the wrongful death statute, expressly made retroactive by the legislature, applies under the circumstances here alleged. The 1982 amendment provides:

"It is further provided, ..., that in respect to any death caused by any wrongful act, neglect or default which could not in the exercise of reasonable diligence be discoverable within three (3) years after the death of such person, an action hereunder shall be commenced within three (3) years of the time that the wrongful act, neglect or default should, in the exercise of reasonable diligence, have been discoverable."

1982 R.I.Pub.Laws ch. 435, § 1. Section 2 of the amendment provided that it would take effect upon passage (May 21, 1982) and would apply to all wrongful death actions for which the wrongful act, neglect or default became discoverable after a date three (3) years prior to the effective date of the amendment. 1982 R.I.Pub.Laws ch. 435, § 2.

Plaintiff asserts that his cause of action against Windsor and Omya became discoverable during April of 1982. On May 24, 1982, Plaintiff sought to amend his complaint in order to add Windsor and Omya as defendants in this action. Therefore, Plaintiff argues, discovery was made within the period of retroactivity established by the 1982 amendment, and suit was brought within three years thereafter.

The Magistrate below considered this argument, but recommended that the 1982 amendment would be unconstitutional as applied in this case. He based his report on *William Danzer & Co. v. Gulf & Ship Island R.R.*, 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126 (1925), in which the Supreme Court held that a statute of limitations, if applied retroactively to revive a cause of action based on a legislatively created liability, would unconstitutionally deprive the defendant of property without due process of law. *See id.* at 637, 45 S.Ct. at 613.

■ This Court finds it unnecessary to reach the constitutionality of the 1982 amendment, either in general, or as applied to the facts of this particular case, in that the Plaintiff's reliance on the discovery rule with respect to Defendants Windsor and Omya is misplaced. The "discovery" referred to in the 1982 amendment to the wrongful death act is the discovery of a wrongful act, neglect or default which caused a death, and not the discovery of a particular defendant. *See generally Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745 (1968) (adoption of discovery rule in medical malpractice actions). *See also Richman v. United States,* 709 F.2d 122, 123 (1st Cir.1983) (where plaintiff knew of injury but failed to inquire and learn of defendant's fault, statute of limitations not tolled). Mr. Westfall had discovered that he was the victim of tortious conduct at the very latest by May 24, 1979, the date on which his

---

the remedy. 48 R.I. at 312, 137 A. at 138. In *Britto* the respondent argued that a 1960 amendment to the Workmen's Compensation Act should not apply retroactively to the petitioner's case because it was enacted subsequent to the time petitioner incurred his work-related disease. 93 R.I. at 433–34, 176 A.2d at 84–85. *See* P.L.1960, ch. 94; R.I.Gen.Laws § 28–34–4 (1979 Reenactment); R.I.Gen.Laws § 28–35–57 (1979 Reenactment). The amendment provided that the time period within which to file a claim would not begin to run until the employee knew or should have known of the existence of the injury or disease and its causal relationship to his employment. 93 R.I. at 432, 176 A.2d at 84. This change, respondent asserted, was substantive and not merely

procedural and should not apply retroactively. *Id.* at 433–34, 176 A.2d at 84–85. The court held "[t]here is no merit in this contention. The amendment was not designed to create a new right. Rather the legislature intended to and did redefine the circumstances which would give rise to a right already existing." *Id.* at 434, 176 A.2d at 85.

Plaintiff's argument that the 1981 and 1982 amendments to the wrongful death statute should be subject to the same reasoning is, at first blush, persuasive. This Court is not convinced, however, that it is free to disregard the more recent pronouncements of the Rhode Island Supreme Court in *Nascimento* and *Dempsey,* and the First Circuit in *Cadieux,* specifically relating to the wrongful death statute.

original complaint was filed. In addition, it is clear from Plaintiff's initial inclusion of John Doe Corporation as a defendant, that Plaintiff knew at that time that there were possibly other defendants responsible to him. When Plaintiff died less than two months later of the same disease alleged in the complaint, that date of discovery did not change. By its terms, the 1982 amendment to the wrongful death statute applies only to those deaths "caused by any wrongful act, neglect or default which could *not* in the exercise of reasonable diligence be discoverable within three (3) years *after the death* of such person, . . . ." (emphasis added). Mr. Westfall's death clearly does not fall within this description. Therefore the 1982 amendment cannot aid Plaintiff in maintaining this action against Windsor and Omya.

Plaintiff's penultimate argument is that by naming a John Doe Corporation in his original complaint, pursuant to R.I.Gen. Laws § 9–5–20, he tolled the statute of limitations. Section 9–5–20 provides as follows:

> Whenever the name of any defendant or respondent is not known to the plaintiff, the summons and other process may issue against him by a fictitious name, or by such description as the plaintiff or complainant may select; and if duly served, it shall not be abated for that cause, but may be amended with or without terms as the court may order.

Defendant Windsor argues that the Federal Rules of Civil Procedure do not authorize "John Doe" pleadings, but instead require this Court to look to the provisions of Fed.R.Civ.P. 15(c) to determine whether the amendment adding Windsor and Omya meets the conditions necessary to relate back to the original complaint. Rule 15(c) provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

The majority of circuits that have considered this issue undoubtedly support Windsor's contention. *See, e.g., Britt v. Arvanitis,* 590 F.2d 57, 61 (3d Cir.1978) (New Jersey statute permitting fictitious name practice was merely procedural and not available to plaintiff in federal diversity action under rule of *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) and in light of Fed.R.Civ.P. 15(c)); *Sassi v. Breir,* 584 F.2d 234, 235 (7th Cir.1978) (naming of "John Doe" defendant in complaint does not toll statute of limitations, but constitutes change of parties and must comply with requirements of Fed.R.Civ.P. 15(c)); *Craig v. United States,* 413 F.2d 854, 856 (9th Cir.), *cert. denied,* 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 451 (1969) (only way to substitute accurate name of defendants after statute of limitation has run is compliance with Fed.R.Civ.P. 15(c), and Rule 15(c) does not permit pleading of fictitious parties). A particularly compelling rationale for not allowing John Doe pleadings in a federal diversity action is the resulting inability to initially determine complete diversity of the parties where one or more of them is an unknown entity. Plaintiff, however, urges this Court to analyze the issue in light of *Marshall v. Mulrenin,* 508 F.2d 39 (1st Cir.1974).

In *Marshall,* the First Circuit considered a conflict between a Massachusetts statute permitting liberal amendments as to parties and pleadings and Fed.R.Civ.P. 15(c). The Massachusetts statute at that time provided as follows:

The court may, at any time before final judgment, except as otherwise provided, allow amendments introducing a necessary party or changing the form of the action, and may allow any other amendment in matter of form or substance in any process, pleading or proceeding, which may enable the plaintiff to sustain the action for the cause for which it was intended to be brought, or enable the defendant to make a legal defence.

Mass.Gen.Laws Ann. ch. 231, § 51.[3] The *Marshall* court determined that this was not a conflict between two strictly procedural rules, in which case the Supreme Court's ruling in *Hanna v. Plumer,* 380 U.S. 460, 465, 85 S.Ct. 1136, 1140, 14 L.Ed.2d 8 (1965) would have required that the federal rule of procedure supersede the state rule. The court held that although the Massachusetts statute was "cast in procedural terms," it had "a direct substantive effect," and "[w]e believe the federal court must recognize it." 508 F.2d at 44.

In *Santiago v. Becton Dickinson & Co., S.A.,* 539 F.Supp. 1149 (D.P.R.1982), the court relied on *Marshall* to uphold the application of Puerto Rico Rule of Civil Procedure 15.5 in a federal diversity action. *Id.* at 1152–53. Rule 15.5 allows a plaintiff to use a fictitious name to identify a defendant whose name is unknown at the time of filing the original complaint. *Id.* at 1152.[4] The court acknowledged the many circuits that require application of Fed.R.Civ.P.

15(c) under these circumstances, but went on to note that "[o]ur Circuit, ..., has adopted a different position in determining which rule is applicable when jurisdiction hinges on diversity." *Id.* at 1152–53. The court refused to base a dismissal of the complaint against two defendants on the fact that their names were added after the statute of limitations had run. *Id.* at 1155.

The facts at issue in *Santiago* are strikingly similar to those involved in this action. In *Santiago,* two injured workers claimed to have been intoxicated during the course of their employment by a dye used in the manufacture of band-aids. *Id.* at 1151. Likewise, Plaintiff in the action before this Court alleges that Mr. Westfall contracted pleural mesothelioma at his place of employment as a result of talc used in the manufacture of rubber products. In both cases, plaintiffs identified unknown defendants in their original complaints as the manufacturers of the harmful products that allegedly caused their injuries. Plaintiffs later amended their complaints, identifying two manufacturers by name after the statutes of limitations had run. In *Santiago,* the manufacturers submitted affidavits that they received no notice of the action until after the statute had run. *Id.* Similarly, in *Marshall,* plaintiffs amended their complaint to add "new and unnotified defendants after the statute had run[,]" after having named the wrong defendants in their original complaint. 508 F.2d at 40–41. Assuming *arguendo* that Defendants Wind-

---

**3.** This statute has since been codified in Mass. R.Civ.P. 15(c), permitting an even more liberal amendment practice. The court in *Covel v. Safetech, Inc.,* 90 F.R.D. 427 (D.Mass.1981) noted:

Although the remainder of Mass.R.Civ.P. 15 is substantially identical to Fed.R.Civ.P. 15, the Reporters' Notes to Mass.R.Civ.P. 15(c) confirm that "Massachusetts practice is more liberal than Federal Rule 15(c) in allowing amendments adding or substituting party defendants after expiration of the period of limitations," 43A Mass.Gen.L.Ann. at 171. The decision to reaffirm the longstanding Massachusetts rule in what was otherwise substantially a verbatim adoption of the Federal Rules of Civil Procedure manifests a deliberate choice by the Massachusetts Supreme Judicial Court and indicates the strength of the Commonwealth's substantive

interest in the matter ... Indeed, in contrast with the predecessor statute, Mass.Gen.L. c. 231, § 51, which declared that the court "may allow" an amendment adding a transactionally related defendant to relate back, Mass.R.Civ.P. 15(c) is in form categorical, saying simply that "the amendment (including an amendment changing a party) relates back to the original pleading."

*Id.* at 429–30.

**4.** Puerto Rico Rule of Civil Procedure 15.5 provides that "[w]here the name of a defendant is not known to the plaintiff, he shall so state in the complaint designating him by any name in the proceeding and upon learning his real name, he shall make amendment in the pleading or proceeding." P.R.Laws Ann., Tit. 32 App. II R. 15.5.

sor and Omya had no notice of Mr. Westfall's action prior to the running of the statute of limitations, all three of these results are in direct contravention of the requirements of Fed.R.Civ.P. 15(c), which mandates that a party to be brought in by amendment receive such notice of the action that he will not be prejudiced in maintaining his defense.

■ Defendant Windsor points out that the statutes at issue in *Marshall, Santiago,* and the case at bar each contain slightly different terms and provisions. The Massachusetts statute is conceivably the broadest, liberally allowing amendments as to parties, process and pleadings at any time before final judgment. The Puerto Rico statute, like the Rhode Island statute, however, relates solely to the naming of John Doe defendants in an original complaint and the later substitution of actual names. The major distinguishing feature of R.I.Gen. Laws § 9–5–20 is the requirement that a defendant must be "duly served" before the amended complaint will be deemed to relate back to the date of the original complaint. Windsor argues that because of this requirement § 9–5–20 is not a pure tolling statute. All three statutes, however, have been construed as providing a means by which plaintiffs may toll the statute of limitations where a defendant's name is unknown at the time the original complaint is filed. *See Santiago,* 539 F.Supp. at 1153 (construing Puerto Rico Rule of Civil Procedure 15.5); *Covel v. Safetech, Inc.,* 90 F.R.D. 427, 429 (D.Mass.1981) (construing Mass.R.Civ.P. 15(c)); *Sousa v. Casey,* 111 R.I. 623, 633, 306 A.2d 186, 191–92 (1973) (construing R.I.Gen.Laws § 9–5–20). It is beyond question that all three statutes have the same substantive effect of allowing previously unnotified defendants to be brought into an action after the applicable statute of limitations has run. Finding no significant distinctions between the totality of circumstances in the case at bar, and those in *Marshall* and *Santiago,* this Court is compelled to follow the reasoning of the First Circuit and the District of Puerto Rico and hold that in a federal diversity action in the District of Rhode Island, John Doe plead-

ings must be allowed where the requirements of R.I.Gen.Laws § 9–5–20 are met.

Defendant Omya argues that even if R.I. Gen.Laws § 9–5–20 applies in a federal diversity suit, Plaintiff's reliance on it in this action is misplaced. Omya contends that § 9–5–20 does not apply where the defendant is an unknown person or entity, but only where the plaintiff knows the defendant's identity but does not know his name at the time of filing the complaint. Omya does not cite any case law in support of this position.

In *Santiago,* the court pointed out that the notes relating to Puerto Rico Rule of Civil Procedure 15.5 indicate "that it does not refer to unknown persons or entities but rather to defendants whose identity is known but whose name at the moment of filing the complaint is unknown to plaintiffs." 539 F.Supp. at 1153. There are no such legislative notes interpreting § 9–5–20, and cases construing the statute do not address this issue. In light of Plaintiff's description of John Doe Corporation in his original complaint, however, it is unnecessary to decide this issue. In paragraph 3 of the complaint, Defendant John Doe Corporation is described as:

> a corporation duly organized and existing under the laws of a state other than Rhode Island with the necessary minimum contacts within the State of Rhode Island to be subject to the jurisdiction of this Honorable Court. At all times relevant hereto Defendant John Doe Corporation manufactured and/or distributed talc to Uniroyal, Inc. for usage in its plant in Providence, Rhode Island.

This Court is satisfied that such a description is sufficient to show that the Defendant John Doe Corporation was not a person or an entity entirely unknown to Plaintiff. As noted *supra,* the plaintiffs in *Santiago* initially described defendant manufacturers in a similar fashion, and the court there found that "a review of the entire original complaint shows that when they filed it they knew that there existed entities that produced, distributed and sold the dye to

their employer whose names at that time were unknown to them." 539 F.Supp. at 1154. By the same token, Plaintiff in this action knew there were entities that manufactured and/or distributed talc to Uniroyal, Inc. for use in its Providence plant during the 30-year period Mr. Westfall was employed there, but did not know all of their names at the time the original complaint was filed.

In support of the Magistrate's recommendation, Defendant Omya next argues that if R.I.Gen.Laws § 9–5–20 applies, Plaintiff's complaint against it should nonetheless be dismissed because the original complaint and subsequent amendments refer to only one John Doe Corporation. Omya contends that § 9–5–20 requires a fictitious designation for each separate defendant whose name is not known, therefore Plaintiff can substitute only Defendant Windsor for the John Doe Corporation in the complaint. The Magistrate accepted this argument and recommended that Omya's motion for summary judgment be granted and that Windsor's be denied. Understandably, Windsor argues with vigor against this result.

Section 9–5–20 does not set forth any particular language that must be used in a complaint filed pursuant to its provisions. In *Sousa v. Casey*, 111 R.I. 623, 306 A.2d 186 (1973), the plaintiff, pursuant to § 9–5–20, filed a complaint against "John Doe, John Smith, John Jones, et al., fictitious names of certain police officers of the City of Providence ... the true names and identity of said police officers being unknown to the plaintiff at this time." *Id.* at 625, 306 A.2d at 188. Defendant Omya submits that the Rhode Island Supreme Court in *Sousa* "delineated" this format as the proper procedure to be followed under the statute. This Court notes that the *Sousa* court neither expressly condoned nor condemned the particular wording of that complaint. Rather, the court impliedly approved the language when it held that the plaintiff had succeeded in tolling the statute of limitations by filing a complaint against unknown defendants. 111 R.I. at 633, 306 A.2d at 192.

In construing § 9–5–20, this Court must first look to the intent of the Rhode Island legislature. *Berthiaume v. School Committee of the City of Woonsocket*, 397 A.2d 889 (R.I.1979). Unfortunately, there is no legislative history of the statute from which to discern that intent. In *Berthiaume*, the court pointed out: "That intent is discovered from an examination of the language, nature, and object of the statute." *Id.* at 892. (*citing Nolan v. Representative Council*, 73 R.I. 498, 502, 57 A.2d 730, 732 (1948)). As noted *supra*, the language of § 9–5–20 does not expressly provide appropriate wording to be used in describing unknown defendants. The *Sousa* court indicated, however, that the nature and object of the statute is to allow a plaintiff to toll the statute of limitations by filing a complaint against fictitious defendants until the plaintiff learns the names of the defendants. 111 R.I. at 632–34, 306 A.2d at 192.

In addition to examining the language, nature and object of § 9–5–20, this Court must also "adhere to the canon that statutes should not be construed to achieve meaningless or absurd results. *See In re Crepeau-Cross*, 385 A.2d 658, 660 (R.I.1978); *State v. Sprague*, 113 R.I. 351, 355, 322 A.2d 36, 38 (1974)." *Berthiaume*, 397 A.2d at 892. Omya's interpretation of the statute allowing the substitution of only one defendant per "John Doe Corporation," would force an absurd and patently unjust result if applied in this case. The entirely fortuitous circumstance that Windsor was named first and Omya was named second in Plaintiff's third amended complaint should, in Omya's estimation, compel the conclusion that Windsor must continue to defend itself in this lawsuit, while Omya escapes further litigation. Furthermore, this Court notes, without deciding, that a routine application of Omya's analysis would seem to effectively preclude the use of § 9–5–20 by products liability plaintiffs who do not know the names of the manufacturers of alleged harmful products. The meaning ascribed to the statute by Omya would unfairly force such plaintiffs to divine how many manufacturers of a product there might be prior to any discovery. If a plaintiff happens to

guess that there are three, and through timely discovery learns that there are four, Omya's reasoning would leave the plaintiff with no recourse against the fourth defendant if the statute of limitations had run. This result contravenes the underlying tolling purpose of § 9–5–20 as interpreted in *Sousa.*

Perhaps the more prudent course for all plaintiffs under these circumstances would be to insert the words "et al" after "John Doe Corporation" in their original and subsequent amended complaints. The purposeful liberalization of pleadings and procedure that has occurred on both a state and federal level, however, and the unambiguous Rhode Island law of statutory construction strongly militate against such a triumph of form over substance. As stated by the Rhode Island Supreme Court in *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745 (1968), "[n]o statute should be construed to bring about a patently inane result; moreover, we have often said the legislature could never be presumed to have intended to enact laws which are absurd, unjust or unreasonable." *Id.* at 239, 243 A.2d at 753 (*citing State v. Haggerty,* 89 R.I. 158, 151 A.2d 382 (1959). *See also Beaudoin v. Petit,* 409 A.2d 536, 540 (R.I.1979); *State v. Sprague,* 113 R.I. 351, 355, 322 A.2d 36, 38 (1974)). Accordingly, this Court upholds Plaintiff's substitution of both Windsor and Omya for "John Doe Corporation" in his third amended complaint.

Finally, this Court must consider whether Plaintiff has complied with the requirement of § 9–5–20 that fictitiously named defendants be "duly served." In *Sousa v. Casey,* the Rhode Island Supreme Court discussed this prerequisite as follows:

Section 9–5–20 further provides that the "summons and other process" must be duly served and that it may be amended with or without terms as the court may order. However, there is nothing in our statute which says that the service must be made within the statute of limitations. Service must be made within a reasonable time after a complaint has been filed, absent a showing by the plaintiff that such delay was excusable. *See Caprio v. Fanning & Doorley Constr. Co.,* 104 R.I. 197, 199–200, 243 A.2d 738, 740 (1968).

111 R.I. at 632–33, 306 A.2d at 192. In *Caprio,* which did not involve the use of § 9–5–20, Plaintiff was injured in a motor vehicle collision. Knowing who the defendants were, she filed her complaint on the last day of the two-year statute of limitations then in effect, but took over a year to issue summonses and process and serve the defendants. 104 R.I. at 197–98, 243 A.2d at 739. The court held:

In the circumstances of this case we cannot say that plaintiff issued process within a reasonable time after she filed her complaint . . . more than a year had elapsed from the time she filed her complaint to the time she issued process. Nor can we say that plaintiff has presented evidence which would justify rendering the aforesaid delay excusable.

*Id.* at 200, 243 A.2d at 740.

More recently, the Rhode Island Supreme Court had occasion to apply this standard in *Curtis v. Diversified Chemicals,* 440 A.2d 747 (R.I.1982). Although the court did not specifically refer to § 9–5–20 in its opinion, it did refer to one of plaintiff's wrongful death actions listing eleven defendants, "as well as 'John Does I–VII' and 'Other Unknown Defendants.'" *Id.* at 748. The precise issue before the court was whether plaintiffs' six, seven, and eight month delays in serving process on the defendants were unreasonable. *Id.* The court upheld the trial justice's determination that the delays were unreasonable, explaining its decision thus:

In this case plaintiffs presented no evidence to justify the delays except for the testimony that their attorney desired to serve all defendants at the same time. Even this excuse does not explain the amount of time plaintiffs took to obtain the names of registered agents or the addresses of some of the defendants. Obviously, much of this information was readily available to plaintiffs. Telephone calls to the Secretary of State's office would have easily and quickly yielded the

names and addresses of registered agents of all domestic corporations and those registered to do business in the state. Additionally, plaintiffs themselves had set forth the addresses of some of the out-of-state defendants in one of their complaints and, under Rule 4(e)(2), could have served process on those defendants by mail without having first obtained the court's permission.... Basing our analysis on the facility with which names and addresses could have been obtained and service effectuated as well as the evidence presented below, we cannot say that the Superior Court justice was clearly wrong in finding that the delays were unreasonable. Neither can we say that he was clearly wrong in rejecting as inexcusable plaintiffs' explanation for the delays.

*Id.* at 749.

Plaintiff argues that all of these cases involved situations where the identities and names of the defendants were known to the plaintiffs. This analysis is accurate, with the exception of the facts in *Curtis,* where plaintiff sued "John Does I–VII." The distinction is unimportant, however, in light of the fact that the *Curtis* court did not consider the difficulty in ascertaining the identity of a John Doe defendant, nor did the plaintiff raise it as a possible reason to excuse her delays in service in that case. This Court accepts Plaintiff's contention that a "reasonable time" within which a known defendant should be served under Rule 4 of the Rhode Island Superior Court Rules of Civil Procedure, is not necessarily the same as a "reasonable time" within which an unknown defendant should be served pursuant to § 9–5–20. With these principles in mind, the Court must now determine whether Plaintiff's delay in serving Omya and Windsor was unreasonable, and if so, whether Plaintiff has "presented evidence which would justify rendering the aforesaid delay excusable." *Caprio,* 104 R.I. at 200, 243 A.2d at 740.

■ Plaintiff commenced this lawsuit on May 24, 1979. Defendants Windsor and Omya were not served with process until June, 1982, more than three years after the filing of the original complaint. This Court finds that such a delay in service is patently unreasonable. Bearing in mind that efforts to ascertain the identity of John Doe defendants would justify a somewhat greater delay than otherwise, the crucial question nonetheless is whether Plaintiff has justified rendering an approximately three-year delay in service excusable.

Defendants Omya and Windsor assert that Plaintiff did not undertake any discovery until August of 1981. Indeed, more than two years had elapsed from the time the original complaint was filed when Plaintiff served its first sets of interrogatories on Defendants Whittaker, Clark & Daniels, Pfizer, and Metropolitan Talc Company in August, 1981. In one of his memoranda, Plaintiff states in passing that "[d]iscovery was ongoing throughout 1980 and 1981." What discovery was ongoing in 1980, however, is impossible to discern. Plaintiff has submitted no affidavits or evidence in support of this contention, and no further explanation of what discovery took place in 1980 appears in the memoranda filed in this action. All other accounts by Plaintiff of the difficulties encountered in the discovery process begin with the August 1981 interrogatories.

Plaintiff has set forth in great detail the problems that arose in trying to identify the type and origin of the talc that allegedly caused Mr. Westfall's mesothelioma. Only after filing Motions to Compel did Plaintiff begin to receive documents and responses to interrogatories from Defendants Whittaker, Pfizer and Metropolitan. This discovery led to the realization that Uniroyal had used three types of talc at its Providence plant— Italian, Montana and Vermont. Further discovery "began to point toward Vermont talc as the likely source of his asbestos-contaminated talc exposure" and "a geologist was consulted in April, 1982 to determine the location of the Vermont mines operating and producing talc during the 1940s and 1950s." (Plaintiff's Memorandum in Opposition to Motions of Defendants Windsor

Minerals, Inc. and Omya, Inc. for Summary Judgment at 4.)

This Court is aware that, unlike the plaintiff in *Curtis,* Plaintiff in this action had to do more than simply ascertain the names of registered agents in Rhode Island for known corporate defendants. Furthermore, Plaintiffs' proffered excuse of troublesome and intricate discovery procedures is a more reasonable one than that rejected in *Curtis,* a desire to serve all defendants simultaneously. The Court appreciates the complexity of the discovery that was necessary in this action. Plaintiff's dissertation on discovery difficulties, however, does not offer a reason for waiting more than two years to even begin discovery. Clearly, discovery was the key to identifying the unknown suppliers of talc to Uniroyal. Astute and painstaking discovery eventually revealed 1) that a producer of Vermont talc was possibly liable to Plaintiff, and 2) who the producers of Vermont talc were during Plaintiff's period of employment. There is ample reason to believe that if Plaintiff had begun discovery earlier in the course of this litigation, the approximately three-year delay in serving Windsor and Omya would not have occurred.

This Court is compelled to find that the delay in serving Defendants Windsor and Omya was unreasonable. The problems Plaintiff had to surmount in the discovery process do not justify waiting more than two years after filing a lawsuit to engage in any discovery whatsoever, and consequently cannot justify a three-year delay in service of process. Therefore, Defendants Windsor and Omya were not "duly served" as required by § 9–5–20, and their Motions for Summary Judgment are hereby granted.