Margaret MARSHALL et al.,
Plaintiffs-Appellants,

v.

George J. MULRENIN et al.,
Defendants-Appellees.

No. 74–1253.

United States Court of Appeals,
First Circuit.

Argued Oct. 9, 1974.

Decided Dec. 20, 1974.

Edward F. Myers, Boston, Mass., with whom Cornelius J. Sullivan, Boston, Mass., was on brief, for plaintiffs-appellants.

Richard L. Neumeier, Boston, Mass., with whom Philander S. Ratzkoff, Richard P. Melick, and Parker, Coulter, Daley & White, Boston, Mass., were on brief, for defendants-appellees.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Plaintiff appellant (strictly, plaintiffs are husband and wife) allegedly fell and injured herself on business premises in Massachusetts known as Craig Village by the Sea in September, 1967. In July, 1969 plaintiff retained counsel and in August a diversity action was instituted in the Massachusetts District Court against a Mr. and Mrs. Kirk, who appeared on the certificate on file in the appropriate town hall in accordance with Mass.G.L. c. 110, § 5, as the "real name of the person conducting the business." In fact, several years before the accident the Kirks had conveyed the premises to the Mulrenins, husband and wife, the present appellees, who at all material times thereafter continued to operate under the original name, but without filing a new certificate. Plaintiff named the Kirks as defendants, relying upon the old certificate as to which, in violation of the statute, the Kirks had failed to file a notice of discontinuance. When, after the Massachusetts statute of limitations for actions for personal injury had run, plaintiff discovered the true facts, she sought to amend by dismissing against the Kirks as defendants and naming the Mulrenins in their stead. Invoking F.R.Civ.P. 15, the court held that the amendment, introducing new

and unnotified defendants after the statute had run, was impermissible.

Rule 15 reads as follows.

"(c) *Relation Back of Amendments.* Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

Plaintiff urges that the notice given the Kirks was, under the circumstances of the case, "such actual or constructive notice" as to fulfill the rule's requirements.

There can be no question of actual notice. Conceivably, notice to the individuals whom the operators of the business permitted to appear as the owners of record should be considered constructive notice to the operators within the meaning of Rule 15(c). This, however, is by no means an obvious conclusion. There was no evidence that the Mulrenins were aware of the statute, or that it had been violated by the prior owners' leaving their certificate on file. We do not pursue the matter, in the absence of authority, because we believe that in spite of Rule 15(c), plaintiff had an absolute right under Massachusetts law to bring in the Mulrenins.

Mass.G.L. c. 231, § 51 reads as follows:

"*Amendments as to parties, process or pleading.* The court may, at any time before final judgment, except as otherwise provided, allow amendments introducing a necessary party, discontinuing as to a party or changing the form of the action, and may allow any other amendment in matter of form or substance in any process, pleading or proceeding, which may enable the plaintiff to sustain the action for the cause for which it was intended to be brought, or enable the defendant to make a legal defence." [1]

There can be no question but that the conditions of this statute were complied with—clearly the action intended to be brought in the statutory sense was against the Mulrenins; nor was there any laches on plaintiff's part. The sole issue, accordingly, is whether the statute may be looked to.

In denying plaintiff's motion on the ground that its power to amend was limited by the terms of Rule 15(c) the district court relied, basically, on Hanna v. Plumer, 1965, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8. Our conclusion that *Hanna* is only superficially apposite requires an extensive analysis. Briefly, and with the greatest of respect, our position is that, perhaps because of the way in which issue was joined, the Court misconstrued the state statute that it struck down, but that this misreading is not to be taken as part of the *ratio decidendi* so far as the treatment of other state statutes in other circumstances is concerned. [2]

In the first sentence of its opinion the *Hanna* Court stated that it proposed to resolve the following issue:

"The question to be decided is whether, in a civil action where the jurisdiction of the United States district court is based upon diversity of citizenship between the parties, service

1. Section 51 has since been replaced by Massachusetts Rule of Civil Procedure 15, which tracks F.R.Civ.P. 15, except that the content of section 51 is included. While the question is not before us, we would expect that the Massachusetts rule retains the same substantive force as the merged statutory provision.

2. We are further conscious of the fact that we were the court, 1 Cir., 331 F.2d 157, which *Hanna* unanimously reversed.

of process shall be made in the manner prescribed by state law [which the Court found to exclude service upon a suitable person residing at the defendant's dwelling house or usual place of abode (hereinafter last and usual service)] or that set forth in Rule 4(d)(1) of the Federal Rules of Civil Procedure," [which permits such service].

This was the question presented by the petition for certiorari, and the question briefed by both parties. After discussing the conflict in the light of Erie R.R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and other authorities, the Court answered its question. "Rule 4(d)(1) is valid and controls the instant case."

Chapter 197 of the Massachusetts General Laws is entitled "Estates of Deceased Persons." Section 9 thereof, the statute which the Court referred to as "state law," is the first section of a subchapter entitled "Limitation of Actions by Creditors." It reads in material part as follows:

"§ 9. *Commencement of actions; extension of limitation by court.* Except as provided in this chapter, an executor or administrator shall not be held to answer to an action by a creditor of the deceased which is not commenced within one year from the time of his giving bond for the performance of his trust, or to such an action which is commenced within said year unless before the expiration thereof the writ in such action has been served by delivery in hand upon such executor or administrator or service thereof accepted by him or a notice stating the

name of the estate, the name and address of the creditor, the amount of the claim and the court in which the action has been brought has been filed in the proper registry of probate. . . . "

In the opinion of the court of appeals section 9 required dismissal of the action because the statute of limitations had run in the absence of due notice within the statutory period. The court did not suggest that the last and usual service made upon the defendant was defective service, or that the defendant was not properly in court. Rather, it stated there was "adequate service of process in the procedural sense." 331 F.2d at 159. The Supreme Court, however, without taking affirmative note of that language, held that section 9 was twofold in purpose; "in part a statute of limitations," and in part a prescribed method of serving process.[3] The Court then held that section 9's failure to recognize last and usual as a method of service was in conflict with Rule 4, and that the latter must prevail.

In our view section 9 does not purport to be, and is not, a restriction on methods of service so far as process is concerned, but leaves extant the full Massachusetts service procedure, which includes last and usual service, precisely in accord with the provisions of Rule 4. Mass.G.L. c. 231, § 31. Rather, in addition to bringing the executor into court, the Massachusetts legislature felt it so important that he be free to make distributions at the earliest possible moment, that it afforded him the protection of

---

**3.** "Section 9 is in part a statute of limitations, providing that an executor need not 'answer to an action . . . which is not commenced within one year from the time of his giving bond . . . .' This part of the statute, the purpose of which is to speed the settlement of estates . . . is not involved in this case, since the action clearly was timely commenced. . . .

"Section 9 also provides for the manner of service. Generally, service of process must be made by 'delivery in hand,' although there are two alternatives: acceptance of service by the executor, or filing of a notice of claim,

the components of which are set out in the statute, in the appropriate probate court. The purpose of this part of the statute, which is involved here, is, as the court below noted, to insure that executors will receive actual notice of claims. Parker v. Rich, 297 Mass. 111, 113–114, 8 N.E.2d 345, 347 (1937). Actual notice is of course also the goal of Rule 4(d)(1); however, the Federal Rule reflects a determination that this goal can be achieved by a method less cumbersome than that prescribed in § 9." 380 U.S. at 462–463 n. 1, 85 S.Ct. at 1139.

affirmative personal notice within the year during which suit must be commenced, and specified three permissible means of notification so as to leave no room for dispute. The suggestion by Mr. Justice Harlan in his concurring opinion that last and usual service under Rule 4 affords substantially as good a notice, 380 U.S. at 478, 85 S.Ct. 1136, is a direct contravention of the statute. Last and usual service, rather than guaranteeing notice, leaves a risk.[4] Massachusetts regards compliance with the statutory terms so important that the defense of inadequate notice cannot even be claimed to be waived. Epstein v. Blender, 1957, 15 Mass.App.Dec. 74. *Cf.* First Portland Nat'l Bank v. Taylor, 1948, 323 Mass. 492, 496, 83 N.E.2d 161; Nochemson v. Aronson, 1932, 279 Mass. 278, 282, 181 N.E. 188.

Timely notice, as distinguished from service of process, is a common Massachusetts requirement as a condition for suit.[5] Viewed in this light, we find nothing in section 9, either in terms or by implication, that restricts a claimant to service in hand. Service in hand is recognized simply as a permissible manner of affording personal notice. We can only think the Court misread the statute when it said, "Generally, service of process must be made by 'delivery in hand,' although there are two alternatives: acceptance of service by the executor, or filing of a notice of claim . . . .." 380 U.S. at 462–463, n. 1,

ante, n. 3, 85 S.Ct. at 1139. All alternatives are alternative (and positive) methods of notice, not of process.[6]

We have gone into the matter at this length because the question naturally arises how the Court came to take the view it did of the Massachusetts statute. Did it mean to give the Federal Rules so broad a scope that every state statute which, by some process of construction, could be thought to conflict therewith could not survive, regardless of its substance?[7] Nothing in the language of the opinion suggests so broad a compass. We prefer to think that the Court, concerned to speak early lest the Federal Rules be whittled away by varying state practices, failed to note the underlying defect in what we can only regard as alarmist petition for certiorari. The petitioner in phrasing the question he claimed was presented made no attempt to support his construction of the state statute as a service provision, but simply asserted the conflict. Unfortunately, at least from the standpoint of his own best interests, respondent merely met petitioner on his own terms, arguing that section 9, although a service provision, embraces substantive goals. The Court apparently thought the court of appeals was of the same view, for it said, "The Court of Appeals for the First Circuit . . . *concluded that the conflict of state and federal rules* was over 'a substantive rather than a procedural matter,'" 380 U.S. at 462–463, 85 S.Ct. at

---

**4.** In stating that an executor subject to last and usual service need only "check at his own house or the federal courthouse" (380 U.S. at 478, 85 S.Ct. at 1148.) in order to obtain the notice for himself, the Justice may be thought to have minimized the risk. Quite apart from the fact that there may be more than one possible federal courthouse, clerks' offices make mistakes. So, also, may a mistake arise out of last and usual service. *Cf.* Mullane v. Central Hanover Bank & Trust Co., 1950, 339 U.S. 306, 314–315, 70 S.Ct. 652, 94 L.Ed. 865; McDonald v. Mabee, 1917, 243 U.S. 90, 92, 37 S.Ct. 343, 61 L.Ed. 608. From such apprehensions the legislature wished executors to be free.

**5.** *See, e. g.,* Mass.G.L. c. 84, § 15 (notice of highway defect as condition of suit against municipality); G.L. c. 84, §§ 18–21 (timely

notice a condition to suit for injuries due to snow and ice).

**6.** For what it is worth, we believe the Court must have misread Parker v. Rich, 1937, 297 Mass. 111, 8 N.E.2d 345, as well. In that case the claimant filed a timely notice in the probate court. However, he failed to take timely steps to enter the writ or make service of process. The Massachusetts court held that filing the notice did not commence the action. If filing notice in the probate court was an alternative service of process, we believe the court would not have reached that result.

**7.** *Cf.* Welch v. Louisiana Power & Light Co., 5 Cir., 1972, 466 F.2d 1344, 1345 ("arguably procedural matters").

1139 (Ital. suppl.). It then held that vis-a-vis Rule 4(d)(1) there was, in fact, "conflicting state procedure." 380 U.S. at 465, 85 S.Ct. 1136.

■ Under all the circumstances we conclude it proper to take *Hanna* at its word, as stating a principle for resolving a direct conflict between two strictly procedural rules. We do not accept the "singularly hard-hearted" view, Ely, The Irrepressible Myth of Erie, 1974, 87 Harv.L.Rev. 693, 697, that *Hanna* commands that the Federal Rules be woodenly applied irrespective of a discoverable substantive, as distinguished from a merely procedural, state purpose. We consider *Hanna's* definitive holding to be contained in its disclaimer of an intent to effect substantive consequences.[8] Such a construction does not, of course, render Federal Rules inoperative in their procedural aspects. It merely means that a rule is not to be applied to the extent, if any, that it would defeat rights arising from state substantive law as distinguished from state procedure.

This line may not always be easy to draw. We recognize, too, that *Hanna* has evoked much learned analysis.[9] However, in this instance we are content to cast ourselves as Christopher Sly.[10]

In the case at bar there is in fact a true conflict between the federal amendment of parties rule and the Massachusetts statute. Paradoxically, Rule 15 seems, basically, drawn to avoid a substantive effect so far as statutes of limitations are concerned, so as not to extend the statute under the guise of permitting an amendment, whereas section 51, although cast in procedural terms, has a direct substantive effect. We believe the federal court must recognize it.

■ The various Massachusetts limitation statutes, Mass.G.L. c. 260, require that action be commenced within a certain period. The time is extended by other provisions. For example, the commencement date is postponed in case of the minority, section 7, or insanity, section 25, of the claimant; or during the obligor's absence from the jurisdiction, section 9, or in case of fraudulent concealment of the cause of action, section 12. The state must be equally free to define what constitutes sufficient commencement. We believe this to be the clear meaning of section 51: an action is commenced within the meaning of the Massachusetts statute of limitations although the wrong defendant is named, so long as it appeared that the correct defendant had been the one intended. We have no question but that the federal court normally must recognize such a provision in a diversity case. *Cf.* Perry v. Allen, 5 Cir., 1956, 239 F.2d 107. A statute of limitations "bears on a State-created right vitally and not merely formally or negligibly." Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079. It should make no difference whether the legislature proceeded within the four corners of the statute of limitations' formal provisions, or by a new act cast in procedural terms that state the result.

■ We do not believe *Hanna* requires us to refuse this recognition. Although Rule 15, on its face, conflicts with section 51, to apply the rule would mean that the choice of forum "would wholly bar recovery." *See* n. 8, ante. We do not read *Hanna* to mean that although the statute of limitations would be tolled if an action were brought on the state side, because of the civil rules it will run if brought in the federal court. We ac-

---

8. "Petitioner, in choosing her forum, was not presented with a situation where application of the state rule would wholly bar recovery; rather, adherence to the state rule would have resulted only in altering the way in which process was served." [Footnotes omitted.] 380 U.S. at 469, 85 S.Ct. at 1143.

9. *See, e. g.,* Ely, ante; Chayes, Some Further Last Words on Erie—the Bead Game, 1974,

87 Harv.L.Rev. 741; McCoid, Hanna v. Plumer: The Erie Doctrine Changes Shape, 1965, 51 Va.L.Rev. 884.

10. "*Beg.* . . . . A good matter, surely. Comes there any more of it?

*Lady.* My lord, 'tis but begun.

*Beg.* 'Tis a very excellent piece of work, madam lady. Would 'twere done!" The Taming of the Shrew, end of Act I, Scene 1.

cordingly hold that section 51 permits the amendment adding appellees as defendants to relate back for the purpose of the Massachusetts statute of limitations in spite of the contrary provisions of Rule 15. To the extent that the courts in Simmons v. Fenton, 7 Cir., 1973, 480 F.2d 133, 136; Welch v. Louisiana Power & Light Co., ante; and Loudenslager v. Temple, 3 Cir., 1972, 466 F.2d 249, 250, suggest otherwise, we decline to follow them.

The judgment is vacated and the action remanded to the district court for further proceedings consistent herewith.