Colienne (Auxier) BRENNAN, aka
Colienne Auxier, Plaintiff,

v.

LERMER CORPORATION, et
al., Defendants.

No. C–83–5803–MHP.

United States District Court,
N.D. California.

Jan. 8, 1986.

Robert E. Cartwright, Jr., Karen E.
Scholer, Cartwright, Sucherman & Slobodin, San Francisco, Cal., for plaintiff.

Russell Leibson, Carroll, Burdick & McDonough, Martin T. Ruane, Kathleen Harrington, Barfield, Dryden & Ruane, Michael G. Lowe, Hanna, Brophy, MacLean, McAleer & Jensen, Patrick Wilson, Morrison & Foerster, San Francisco, Cal., for defendants.

## OPINION

PATEL, District Judge.

Plaintiff Colienne Brennan filed this personal injury action in state court naming Lermer Corporation ("Lermer") and a number of "Does" as defendants. Lermer answered the complaint and subsequently removed the action to federal court on diversity grounds. After removal, and more than one year after plaintiff's claim accrued, she discovered the true identity of a number of potential defendants and amended her complaint to substitute these defendants for the "Does" named in her original complaint. One of the newly discovered defendants, Fairchild Industries, Inc. ("Fairchild"), has moved to dismiss the amended complaint on the ground that it is barred by California's one-year statute of limitations for personal injury actions.

Plaintiff contends that under the California pleading scheme permitting Doe defendants, Cal.Civ.Proc.Code § 474, the statute of limitations was effectively extended

for three years from the date she filed the original complaint and, therefore, her amended complaint against Fairchild was timely. Fairchild responds that this case is governed by Fed.R.Civ.P. 15(c) regarding the relation-back of amendments, not by the California Doe pleading provisions. Because plaintiff has failed to meet the requirements of Rule 15(c), Fairchild argues, her amended complaint does not "relate back" to the date of the original complaint and, therefore, is barred by the one-year statute of limitations.

For the reasons given below, the court concludes that the California Doe pleading scheme is state "substantive law" which must be applied in this diversity action. Because under California law plaintiff's amended complaint was timely filed, Fairchild's motion to dismiss is denied.

BACKGROUND

Plaintiff is employed as a flight attendant by Trans World Airlines ("TWA"). In the course of her employment, plaintiff uses an inflight food and beverage service cart to serve passengers on board the aircraft. These carts have a horizontal deadman brake handle which apparently some flight attendants find difficult to operate. Plaintiff alleges that as a result of using the service carts, she now suffers from bilateral carpal tunnel syndrome, an ailment which plaintiff describes as a "cumulative trauma injury, which affects the nerves of the wrists, resulting in loss of sensation and impaired use of hands."

Plaintiff alleges that she first noticed symptoms of the ailment in April or early May 1982 and was diagnosed as suffering from carpal tunnel syndrome on July 27, 1982, at which time she first began to suspect that her symptoms resulted from use of the inflight service carts. On March 7, 1983 she was informed by TWA that "Lermer Corporation" manufactured the carts used on board flights.

On March 18, 1983 plaintiff filed a complaint in San Francisco Superior Court naming as defendants the Lermer Corporation, Black Corporation, White Corporation and One Hundred "Does." The complaint alleged that each of the defendants was involved in the design, manufacture and sale of food and beverage service carts and set forth causes of action for negligence, breach of express and implied warranties, strict products liability and false representation.[1] Defendant Lermer Corporation filed an answer in state court and on December 6, 1983 removed the case to this court, asserting diversity jurisdiction.

Plaintiff alleges she first learned in April 1984 that defendant Fairchild was involved in the manufacture of inflight service carts. At that time plaintiff filed a First Amended Complaint, specifically naming Fairchild and others as defendants and dropping from the complaint the Black and White Corporations and the One Hundred Doe defendants.[2] Plaintiff served Fairchild with a copy of the First Amended Complaint in May 1984 and Fairchild has participated in the litigation since that time.

In March 1985 it was discovered that plaintiff had filed the First Amended Complaint without stipulation or leave of court in accordance with Fed.R.Civ.P. 15(a). Consequently, on March 14, 1985 the court ordered that plaintiff's First Amended Complaint be stricken and deemed lodged with the court only. On April 25, 1985 the court granted plaintiff's motion for leave to file the First Amended Complaint, which plaintiff filed and served upon Fairchild on May 10, 1985.

DISCUSSION

Fairchild moves to dismiss the First Amended Complaint pursuant to Fed.R. Civ.P. 12(b)(6) on the ground that it was filed after the applicable statute of limitations had run. Cal.Civ.Proc.Code § 340(3)[3]

---

**1.** The complaint also sets forth a claim for punitive damages as a separate "cause of action."

**2.** Although plaintiff did not expressly substitute Fairchild and the others for the Doe defendants, this was the effect of her amendment.

**3.** All statutory references are to the California Code of Civil Procedure unless otherwise indicated.

provides that any action for personal injury must be commenced within one year. This one-year limitations period applies to all personal injury actions, including those based on negligence, products liability and breach of warranty. *See, e.g., Sevilla v. Stearns-Roger, Inc.,* 101 Cal.App.3d 608, 610, 161 Cal.Rptr. 700 (1980); *Howe v. Pioneer Manufacturing Co.,* 262 Cal.App.2d 330, 339, 68 Cal.Rptr. 617 (1968).

Under § 474, however, a plaintiff who does not know the identity of a particular defendant at the time of injury may file a complaint within one year naming a fictitious defendant and then amend the complaint when the defendant's identity is discovered.[4] Once the original complaint is filed, the plaintiff has up to three years to identify and serve any of the Doe defendants. Cal.Civ.Proc.Code § 583.210.[5] The Legislative Committee Comment explains that § 583.210 "applies to a defendant sued by a fictitious name from the time the complaint is filed." Cal.Civ.Proc.Code § 583.210 legislative committee comment (West Supp.1985). State case law supports this explanation by holding that where a plaintiff files a complaint naming a fictitious defendant and within three years amends the complaint to substitute the defendant's true name, the defendant "is considered a party to the action from its commencement so that *the statute of limitations stops running* as of the date of the earlier pleading." *Austin v. Massachusetts Bonding & Insurance Co.,* 56 Cal.2d 596, 599, 15 Cal.Rptr. 817, 364 P.2d 681 (1961) (emphasis added). Thus, taken together, §§ 340(3), 474 and 583.210 provide the "functional equivalent" of a limitations period of up to four years, depending on when the original complaint is filed. *Rumberg v. Weber Aircraft Corp.,* 424 F.Supp. 294, 297 (C.D.Cal.1976).

Plaintiff filed her original complaint on March 18, 1983, less than a year after she first noticed symptoms of carpal tunnel syndrome and approximately eight months after she first began to suspect that her symptoms resulted from use of the inflight service carts. Her properly filed First Amended Complaint, substituting Fairchild for one of the Doe defendants, was filed and served upon Fairchild on May 10, 1985, well within the three years provided by § 583.210. Thus, under California law, plaintiff's First Amended Complaint was timely filed.

Fairchild argues, however, that Fed.R. Civ.Proc. 15(c)—not California law—governs this case and that under Rule 15(c) plaintiff's First Amended Complaint is untimely. Rule 15(c) provides, in pertinent part:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Rule 15(c) requires that the defendant receive notice of the action "within the period provided by law for commencing the action"—in this case, one year. Plaintiff

---

**4.** Section 474 provides, in part: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly."

**5.** Section 583.210(a) provides: "The summons and complaint shall be served upon a defendant within three years after the action is commenced against the defendant. For the purposes of this subdivision an action is commenced at the time the complaint is filed."

apparently concedes that Fairchild did not receive notice of this action until May 1984 when plaintiff served Fairchild with the improperly filed First Amended Complaint.[6] Therefore even assuming that plaintiff's action did not accrue until July 27, 1982 when she first began to suspect the connection between her injury and the service carts, Fairchild did not receive notice within one year as required under Rule 15(c).

Under California law plaintiff's First Amended Complaint was timely; under Rule 15(c) it was untimely. Thus the court's ruling on Fairchild's motion to dismiss will depend on which law applies.

## I. *California Law*

■ It is, of course, well established that in diversity actions a federal court must apply the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). State statutes of limitations are considered substantive law for purposes of the *Erie* doctrine, *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Walker v. Armco Steel Corp.,* 446 U.S. 740, 746, 100 S.Ct. 1978, 1983, 64 L.Ed.2d 659 (1980); *Nelson v. A.H. Robins Co.,* 515 F.Supp. 623, 625 (N.D.Cal.1981), as are those state provisions which are "an integral part" of the statute of limitations. *Walker,* 446 U.S. at 751–52, 100 S.Ct. at 1985–86; *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949).

■ State laws which affect the tolling of a statute of limitations are generally regarded as "an integral part" of the state limitations statute. *See, e.g., Walker,* 446 U.S. at 750–51, 100 S.Ct. at 1985–86; *Ragan,* 337 U.S. at 534, 69 S.Ct. at 1235; *Britt v. Arvanitis,* 590 F.2d 57, 59 (3d Cir.1978); *Marshall v. Mulrenin,* 508 F.2d 39 (1st Cir.1974). Indeed, in *Alonzo v.*

*ACF Property Management, Inc.,* 643 F.2d 578, 580 (9th Cir.1981), this circuit applied state filing and computation of time provisions in a diversity action because they were deemed an integral part of the state statute of limitations. As the Supreme Court has observed in a related context:

"Any period of limitation ... is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action. Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones. In virtually all statutes of limitations the chronological length of the limitations period is interrelated with provisions regarding tolling, revival, and questions of application."

*Board of Regents, etc. v. Tomanio,* 446 U.S. 478, 485–86, 100 S.Ct. 1790, 1795–96, 64 L.Ed.2d 440 (1980) (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975) ).

There can be little doubt that §§ 474 and 583.210, taken together, are "integral" to California's statute of limitations scheme and embody state substantive policy. The Supreme Court of California has held that § 474 creates a statutory "right of a plaintiff to use a fictitious name where he is ignorant of the defendant's true name." *Austin,* 56 Cal.2d at 602, 15 Cal.Rptr. 817, 364 P.2d 681. The purpose of § 474 "is to enable such a plaintiff to bring suit before it is barred by the statute of limitations." *Id.* at 602, 15 Cal.Rptr. 817, 364 P.2d 681; *Streicher v. Tommy's Electric Co.,* 164 Cal.App.3d 876, 882, 211 Cal.Rptr. 22 (1985). Section 474 achieves this purpose

---

**6.** Although plaintiff does not specifically address in her papers whether the requirements of Rule 15(c) have been met in this case, she alleges that Fairchild "had actual notice of this action when they were served with a First Amended Complaint in May 1984." There is nothing in the record to indicate that Fairchild had notice at an earlier date nor does plaintiff make any such allegation.

by tolling the statute of limitations as of the date the original complaint is filed, provided the defendant is identified and served within the three years prescribed by § 583.210.

The tolling effect of § 474 takes on particular significance in personal injury actions. The one-year limitations period prescribed by § 340(3) is unusually short compared to the statutes of limitations for personal injury actions provided in other states. *See* Hogan, *California's Unique Doe Defendant Practice: A Fiction Stranger Than Truth*, 30 Stan.L.Rev. 51, 93–94 (1977) (noting that in 26 jurisdictions the limitations period is at least three years while in another 20 states the limitations period is two years). Given the realities of modern tort litigation, in many cases one year may not provide an injured plaintiff sufficient time to identify and locate all potential defendants. This is especially true in products liability cases which often involve a large number of defendants with varying degrees of involvement in and responsibility for the condition of the end product. By effectively extending the statutes of limitations by use of fictitious defendant provisions, §§ 474 and 583.210 help to mitigate the harshness of the one-year limitations period prescribed by § 340(3). *See, e.g., Rumberg*, 424 F.Supp. at 297 (noting that § 474 "mitigates the harshness of a statute of limitations that is short in comparison to limitations in other jurisdictions"); Hogan, 30 Stan.L.Rev. at 95 ("California's Doe defendant practice may be largely the product of a judicial realization that the state's limitation period for personal injury actions provides too short a time for plaintiffs to ascertain all potentially liable parties").

As the California Supreme Court has noted, by tolling the statute of limitations in Doe pleading cases § 474 also serves the strong state policy in favor of litigating cases on their merits. *Austin*, 56 Cal.2d at 603, 15 Cal.Rptr. 817, 364 P.2d 681; *see also Streicher*, 164 Cal.App.3d at 882, 211 Cal.Rptr. 22. Because of the important policies served by § 474, California courts have been very liberal in permitting the

amendment of pleadings to bring in a defendant previously sued by a fictitious name. *Barrows v. American Motors Corp.*, 144 Cal.App.3d 1, 7, 192 Cal.Rptr. 380 (1983).

Viewed in this context, California's Doe pleading practice "must be considered part and parcel of the statute of limitations." *Walker*, 446 U.S. at 752, 100 S.Ct. at 1986. Sections 340(3), 474 and 583.210, taken together, constitute a comprehensive state statutory scheme which strikes a balance between a number of competing interests including defendants' interest in repose, the state's interest in the prompt commencement of litigation, and the interest of both the plaintiffs and the state in litigating cases on their merits and providing compensation for those wrongfully injured. Applying § 340(3) but not §§ 474 and 583.-210, as Fairchild urges, would upset this balance and would distort California's comprehensive statutory scheme. As the court noted in *United States ex rel. Sabella v. Newsday*, 315 F.Supp. 333, 335 (E.D.N.Y. 1970): "[A] severe, short state statute may be considerably ameliorated by other state provisions; ignoring the softening criteria may lead to unintended and harsh cutting off of meritorious claims."

The court concludes that, although cast in procedural terms, §§ 474 and 583.210 are an integral part of the California statute of limitations and are "substantive" both in purpose and effect.

Another court in this Circuit has reached the same conclusion. In *Rumberg v. Weber Aircraft Corp.*, 424 F.Supp. 294 (C.D. Cal.1976), the plaintiff filed a wrongful death action in state court alleging that her husband's death was caused by the malfunction of an aircraft cockpit ejection system. The next day she filed a federal action against the same parties. In her state complaint, plaintiff named a number of Doe defendants pursuant to § 474. She did not name the Doe defendants in her federal complaint, however, because a local rule prohibited the District Court from accepting any complaints that named ficti-

tious parties.[7] When, more than a year later, plaintiff learned the identity of several of the unknown defendants, she amended both her state and federal complaints to include these defendants. The "newly joined" defendants then moved to dismiss the federal action pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that the amended complaint was barred by the one-year statute of limitations prescribed by § 340(3).

The court denied defendants' motion. Refusing to "myopically focus[]" on § 340(3) alone, the court held that §§ 340(3), 474 and 581a,[8] taken together, provide the "functional equivalent" of a limitations period of up to four years. 424 F.Supp. at 297–98. This statutory scheme, the court noted, both promotes California's policy in favor of litigating cases on their merits and helps to mitigate the harshness of the relatively short one-year statute of limitations. *Id.* at 297. The court concluded that the California statutory scheme embodied "substantive policy" which, although "implemented through the procedural mechanism of 'Doe' allegations," nonetheless constitutes substantive state law which must be applied in federal diversity actions. *Id.* at 298.

A number of courts in other jurisdictions have held that Doe pleading provisions similar to California's are substantive rather than procedural. At issue in *Santiago v.*

*Becton Dickinson & Co., S.A.,* 539 F.Supp. 1149 (D.Puerto Rico 1982), was Puerto Rico's Rule of Civil Procedure 15.5, a Doe pleading statute derived from § 474. 539 F.Supp. at 1153 n. 5. Noting that the Doe pleading provisions "provide a mechanism by which a plaintiff may interrupt the statute of limitations by relating the substitution of an unknown defendant back to the time of the filing of the original complaint," the court held that "[t]he effect of this procedural mechanism is clearly substantive since the newly identified party will be considered a defendant from the moment the original complaint was filed." *Id.* Thus, the court concluded, the Puerto Rico Rules of Civil Procedure and not Rule 15(c) govern the determination of whether the plaintiff's amended complaint was timely.[9]

Similarly, in *Westfall v. Whittaker, Clark & Daniels, Metropolitan Talc Co., Inc.,* 571 F.Supp. 304 (D.R.I.1983), the court was confronted with the issue whether the state Doe pleading statute (R.I.Gen. Laws § 9–5–20) or Rule 15(c) governed the amendment of a complaint where the plaintiff sought to substitute the name of a newly identified defendant for one of the Doe defendants named in the original complaint. After comparing the statutes at issue in *Marshall* and *Santiago* with the

---

**7.** Local Rule 4(j) of the Central District of California provided: "Unless otherwise ordered by the court in a particular case, the Clerk shall refuse to accept for filing, in any civil action or proceeding originally commenced in this court, any complaint wherein any party is designated and sought to be joined under a name which is alleged to be, or for other reasons unquestionably is, wholly fictitious, unless the complaint be accompanied by a dismissal as to every party designated by a fictitious name." *Rumberg,* 424 F.Supp. at 296 n. 2. There is no similar local rule in the Northern District of California.

**8.** Section 581a was the predecessor to § 583.-210. Like § 583.210, it provided for service within three years after commencement of the action.

**9.** In so holding, the *Santiago* court relied on the First Circuit's decision in *Marshall v. Mulrenin,* 508 F.2d 39 (1st Cir.1974). Although *Marshall* did not involve a Doe pleading statute, it is cited by many courts and commentators as one of the

few cases in which a state law concerning relation-back has been held to govern over Rule 15(c). At issue in *Marshall* was Mass.Gen.Laws Ann. ch. 231, § 51 which authorized the courts to allow any "amendment in matter of form or substance in any process, pleading or proceeding, which may enable the plaintiff to sustain the action for the cause for which it was intended to be brought, or enable the defendant to make a legal defense." 508 F.2d at 41. The court acknowledged that the Massachusetts statute was much more liberal than Rule 15(c) and clearly conflicted with the Federal Rule. Nonetheless the court determined that the state provision had a "direct substantive effect" and, based on its own interpretation of the Supreme Court's decision in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), that the state provision must be applied in diversity actions "in spite of the contrary provisions of Rule 15." *Id.* at 44–45.

Rhode Island Doe pleading statute the court held as follows:

> All three statutes ... have been construed as providing a means by which plaintiffs may toll the statute of limitations where a defendant's name is unknown at the time the original complaint is filed. It is beyond question that all three statutes have the same substantive effect of allowing previously unnotified defendants to be brought into an action after the applicable statute of limitations has run. Finding no significant distinctions between the totality of circumstances in the case at bar, and those in *Marshall* and *Santiago*, this Court is compelled to follow the reasoning of the First Circuit and the District of Puerto Rico and hold that in a federal diversity action in the District of Rhode Island, John Doe pleadings must be allowed where the requirements of R.I.Gen.Laws § 9–5–20 are met. ·

571 F.Supp. at 312 (citations omitted). *Cf. Britt v. Arvantis, M.D.*, 590 F.2d at 61 (held New Jersey Doe pleading statute does not extend statute of limitations period, is simply a procedural rule and therefore is not controlling in federal diversity actions); *Williams v. Avis Transport of Canada, Ltd.*, 57 F.R.D. 53 (D.Nev.1972) (holding Doe pleading under Nevada rule "similar" to § 474 is "a procedural matter, not one of substantive law" and reading the "mistake concerning the identity of the proper party" language of Rule 15(c) broadly to include any omission of a party who cannot be identified).

Ordinarily where, as here, it is determined that the relevant state law is "substantive" rather than merely "procedural", *Erie* requires the court to apply state law. Fairchild argues, however, that the *Erie* doctrine is inapplicable in this case in light of the Supreme Court's decision in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

## II. *Effect of Hanna v. Plumer*

The question before the court in *Hanna* was "whether, in a civil action where the jurisdiction of the United States district court is based upon diversity of citizenship between the parties, service of process shall be made in the manner prescribed by state law or that set forth in Rule 4(d)(1) of the Federal Rules of Civil Procedure." 380 U.S. at 461, 85 S.Ct. at 1138. The plaintiffs in *Hanna* filed an action in federal court and served process on the defendant by leaving copies of the summons and complaint with the defendant's wife at the couple's residence. Although Rule 4(d)(1) allows service to be made in this manner, Massachusetts law requires in-hand service. Thus, if the state service requirement governed, defendant was entitled to have the action dismissed; if Rule 4(d)(1) controlled, the litigation would proceed. Under these circumstances, the defendant argued, the choice between state and federal law was "outcome-determinative" and therefore *Erie* mandated that the federal court apply state law. The Supreme Court rejected defendant's argument on two grounds.

First, the Court rejected defendant's overly formalistic application of the "outcome-determinative" test. " 'Outcome-determination' analysis was never intended to serve as a talisman," the Court stated. 380 U.S. at 466–67, 85 S.Ct. at 1141. Rather, the "outcome-determinative" test must be read with reference to the "twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.* at 468, 85 S.Ct. at 1142 (footnote omitted). The Court concluded that the relatively insubstantial variation between the state and federal rules concerning service of process was unlikely either to affect the parties' choice of forum or to raise the sort of equal protection problems which concerned the court in *Erie.*

The Court found a second, "more fundamental flaw" in defendant's argument: "the incorrect assumption that the rule of *Erie R. Co. v. Tompkins* constitutes the appropriate test of the validity and therefore the applicability of a Federal Rule of Civil Procedure." *Id.* at 469, 85 S.Ct. at

1143. "When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." *Id.* at 471, 85 S.Ct. at 1144. Thus, at least where there is a "direct conflict" between a "housekeeping rule[ ]" prescribed by Congress for the federal courts and a "comparable state rule[ ]," the Federal Rule will apply in diversity actions unless the Rule is either unconstitutional or outside the scope of the Rules Enabling Act. *Id.* at 472–73, 85 S.Ct. at 1144–45.

In *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), the Court clarified its holding in *Hanna*. *Walker* involved the same issue raised in *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949): whether a federal court sitting in diversity should apply state law or Rule 3 of the Federal Rules of Civil Procedure in determining when an action is commenced for the purpose of tolling the state statute of limitations. Under the

state laws at issue in both *Walker* and *Ragan,* an action was not deemed "commenced" for purposes of the statute of limitations until the summons was served on the defendant. In contrast, Rule 3 provides that a "civil action is commenced by filing a complaint with the court." In *Ragan* the court held the state statute was an "integral part" of the state statute of limitations and, as such, constituted substantive law which the federal court must apply in diversity actions. The plaintiff in *Walker* argued that *Hanna* overruled *Ragan* and that, after *Hanna,* the proper test was not whether the state law was an integral part of the statute of limitations but rather whether Rule 3 is within the scope of the Rules Enabling Act and within the constitutional powers of Congress.

The *Walker* Court rejected plaintiff's argument, holding that *Hanna* did not affect the holding or the analysis of *Ragan*. The Court emphasized that the *Hanna* analysis applies only where there is a "direct collision" between the Federal Rule and state law. 446 U.S. at 749, 100 S.Ct. at 1985.[10] "The first question must therefore be whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the Court. It is only if that question is answered affirmatively that the

---

**10.** A number of courts have interpreted *Hanna* to require the *"Hanna* analysis" only where there is a direct conflict between a state and federal rule both of which are clearly procedural. Consequently, these courts have held that where the conflict is between a Federal Rule of Civil Procedure and a substantive state law, the *Hanna* analysis is inapplicable. *See, e.g., Marshall,* 508 F.2d at 44 (interpreting *Hanna* "as stating a principle for resolving a direct conflict between two strictly procedural rules"); *Britt,* 590 F.2d at 60 (citing *Hanna* for the proposition that where the conflict is between a state substantive rule and a federal rule, it is "axiomatic" that the state rule applies, whereas in a conflict between two procedural rules, the federal rule prevails); *Covel v. Safetech, Inc.,* 90 F.R.D. 427, 430 (D.Mass.1981) (*Hanna* "should be viewed in the context that the Court was resolving a clash between what it determined to be two clearly 'procedural' rules"); *Rumberg,* 424 F.Supp. at 298 (citing *Hanna* for the proposition that although a federal court sitting in diversity must apply the substantive law of the forum, the

court "is not bound by state procedural law when the matter before the court falls within the scope of a federal procedural rule"). If this interpretation of *Hanna* is correct, the *Hanna* analysis would not apply in this case whether or not there is a "direct conflict" between the California and federal provisions, given the court's determination that the California statutory scheme is a "substantive" one. The Supreme Court's analysis in *Walker,* however, suggests this interpretation of *Hanna* may be too narrow. In *Walker* the Court found it necessary to determine whether there was a direct conflict between Rule 4(d)(1) and the Oklahoma statute even though the Court determined that the state law was an "integral part" of the state statute of limitations and embodied substantive "policy determinations." 446 U.S. at 752, 100 S.Ct. at 1986. In any event, because the court concludes there is no direct clash between the state and federal law in this case, it need not determine the precise scope of the Court's holding in *Hanna.*

*Hanna* analysis applies." *Id.* at 749–750, 100 S.Ct. at 1984–85. The Court concluded that there was no "direct conflict" between Rule 3 and the Oklahoma statute governing the commencement of civil actions. *Id.* at 752, 100 S.Ct. at 1986. The Court noted that "the Oklahoma statute is a statement of a substantive decision by that State that actual service on, and accordingly actual notice by, the defendant is an integral part of the several policies served by the statute of limitations," whereas Rule 3 "simply states that '[a] civil action is commenced by filing a complaint with the court.' There is no indication that the Rule was intended to toll a state statute of limitations, much less that it purported to displace state tolling rules for purposes of state statutes of limitations." *Id.* at 750–51, 100 S.Ct. at 1985 (footnote omitted). Thus, the Court concluded, Rule 3 and the Oklahoma statute "can exist side by side ... each controlling its own intended sphere of coverage without conflict." *Id.* at 752, 100 S.Ct. at 1986. There being no "direct conflict" between the two laws, the Court applied the *Erie* test, rather than the *Hanna* analysis, and held as it had in *Ragan* that the state law applied in diversity actions. *Id.* at 752–53, 100 S.Ct. at 1986.

Although the area of potential conflict between Rule 15(c) and §§ 474 and 583.210 arguably is greater than that between Rule 3 and the state statutes at issue in *Walker* and *Ragan,* it is not such a "direct conflict" as to require application of the *Hanna* analysis. Under the California Doe pleading scheme, a plaintiff may commence an action against unidentified parties by filing a complaint naming Doe defendants within one year. The very act of filing the complaint extends the limitation period for three years. Thus, if the plaintiff successfully identifies and serves the Doe defendants within three years, the limitation period will not have run and the amended complaint will be timely. If, on the other hand, the plaintiff is unable to identify and serve

the defendants, the statute of limitations will run at the end of the three years, thus barring any later amendment. As already discussed, it is the very purpose of the California Doe pleading scheme to extend the statute of limitations in order to provide additional time for plaintiffs to identify those parties who may be responsible for their injuries.

In contrast, although Rule 15(c) is in some respects "intimately connected" with the statute of limitations (Fed.R.Civ.P. 15 advisory committee note), it is not concerned either with determining or altering the length of the limitations period. Rather, Rule 15(c) speaks to the question whether, and under what circumstances, a party may amend his or her complaint *after* the limitations period has already run. As the court in *Rumberg* noted:

> The California statute of limitations scheme as applied in this case does not deal with the "relation back" doctrine at all but rather extends or tolls the limitations period in the factual circumstances that exist in this case. Rule 15(c) is designed to provide a uniform solution to statute of limitations problems when amendments are sought *after* the limitations period has expired; it was not designed to determine the *length* of the limitations period to be applied.

424 F.Supp. at 300–01 (emphasis in original). *See also Santiago,* 539 F.Supp. at 1153 ("The federal rules do not deal with the particular problem of John Doe defendants"); *Williams v. U.S.,* 353 F.Supp. 1226, 1231 (E.D.La.1973) (holding no conflict between Rule 15(c) and a state law providing that a suit against one person tolls the statute of limitations against all persons solidarily obligated with him, on the ground that the state law "does not deal with the 'relation back' doctrine at all but simply interrupts the running of the prescription against any solidary obligor once the suit is filed").[11] As in *Walker,* "[t]here is no indi-

---

**11.** To the extent the California statutory scheme could arguably be characterized simply as a form of relation-back, the court notes that the broad policy underlying Rule 15(c) actually support the application of state law in this case. Rule 15(c), like the California scheme, is intended to promote the strong policy in favor of deciding cases on their merits as well as the

cation that [Rule 15(c) ] was intended to toll a state statute of limitations, much less that it purported to displace state tolling rules for purposes of state statutes of limitations." 446 U.S. at 750–51, 100 S.Ct. at

federal policies in favor of simplified pleadings, liberal amendments, easy joinder of parties and claims, and broad discovery. *See* 6 C. Wright & A. Miller, Federal Practice & Procedure § 1503 at 535 (1971); *Covel v. Safetech, Inc.,* 90 F.R.D. at 432; *Rumberg,* 424 F.Supp. at 301 n. 9. "In addition, the purpose of Rule 15(c) is to provide relief from harsh state rules in cases where the applicable state law would bar the amended complaint." *Williams,* 353 F.Supp. at 1231. In light of the policies underlying Rule 15(c), a number of courts and commentators have concluded that where the applicable state relation-back law is more liberal than Rule 15(c), the state law should govern in diversity actions. *See, e.g., Marshall,* 508 F.2d at 44 ("We do not read *Hanna* to mean that although the statute of limitations would be tolled if an action were brought on the state side, because of the civil rules it will run if brought in the federal court"); *Covel,* 90 F.R.D. at 433 (Rule 15(c) "was not meant to override a state law of limitations allowing more liberal relation-back"); *Rumberg,* 424 F.Supp. at 301 n. 9 ("The *Erie* analysis as elucidated by *Hanna* ... might well differ in the situation in which Rule 15(c) would seem to bar an amendment which state law allows"); *Williams,* 353 F.Supp. at 1231 ("We have discovered no cases which construe Rule 15(c) to bar the amended complaint in the face of a state rule allowing the complaint"); 6 C. Wright, A. Miller & M. Kane Federal Practice & Procedure § 1503 at 252 (West Supp. 1985) (applying more liberal state law "does not represent a departure from *Hanna*"). These cases suggest that even if the court were to construe the California Doe pleading scheme as a relation-back provision in conflict with Rule 15(c), California law would apply in this case.

**12.** Even if the court were to find a clash between state law and Rule 15(c), *Hanna* would not compel a different result. *Hanna* eschewed an "outcome-determinative" test, pointing out that *any* procedural differences are likely to result in a different outcome. The federal-state differences in *Hanna* were procedural. Use of the federal procedure was not likely to thwart the purposes of *Erie:* discouraging forum shopping and according evenhandedness to litigants before state and federal forums. A litigant would not suffer unfairly or be likely to select a forum based upon the differences in service of process rules. The same cannot be said for rules that toll or extend the period of time within which an action may be brought. *See, e.g., Walker,* 446 U.S. at 752–53, 100 S.Ct. at 1986; *Alonzo,* 643 F.2d at 578. Such a result would also seem to be indicated by the Rules

1985. Thus, there is no "direct conflict" between Rule 15(c) and the California provisions,[12] and the *Erie* doctrine therefore applies. *Walker,* 446 U.S. at 752, 100 S.Ct. at 1986.[13]

Enabling Act, 28 U.S.C. § 2072 providing that federal rules of procedure promulgated by the Supreme Court "shall not abridge, enlarge or modify any substantive right...."

**13.** *Santana v. Holiday Inns, Inc.,* 686 F.2d 736 (9th Cir.1982), cited by Fairchild, is inapposite. In *Santana,* the court simply held that even though under state law the statute of limitations had not been tolled and therefore had run, the plaintiff could amend his complaint under Rule 15(c) to add a new claim. This was a straightforward application of Rule 15(c) which, by its terms, applies where a party seeks to amend a pleading *after* the statute of limitations has run. The court in *Santana* was not confronted with, and therefore did not address, the issue whether Rule 15(c) precludes application of a state substantive law whose very purpose is to prevent the statute of limitations from running in the first place. Furthermore, *Santana* did not involve the application of a Doe pleading provision, let alone California's relatively unique and comprehensive Doe pleading scheme.

*Craig v. United States,* 413 F.2d 854 (9th Cir.), *cert. denied,* 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 451 (1969), is also inapposite. *Craig* was not a diversity action. Thus, the court was not faced with deciding whether Rule 15(c) or a state substantive Doe pleading scheme would control amendment of the plaintiff's complaint. Indeed, it appears from the District Court's opinion in *Craig* that plaintiff's motion to amend the complaint was specifically brought under Rule 15(c). 284 F.Supp. 697, 698 (S.D. Cal.1967). *Craig* makes reference to diversity cases in which Doe pleading has been disapproved. However, the cases to which it refers deal only with Doe allegations made in nonspecific terms and used to defeat diversity. The referenced cases do not address the statute of limitations problem presented here. 413 F.2d at 856 n. 1.

Although the Ninth Circuit has often expressed disapproval of the use of Doe pleading in federal court, its displeasure stems from the problems Doe pleading creates in establishing and maintaining diversity jurisdiction, not with the tolling aspects of the Doe pleading practice. *See, e.g., Fifty Associates v. Prudential Insurance Co. of America,* 446 F.2d 1187, 1191 (9th Cir. 1970); *Grigg v. Southern Pacific Co.,* 246 F.2d 613, 620 (9th Cir.1957); *Sigurdson v. Del Guercio,* 241 F.2d 480, 482 (9th Cir.1956); *Molnar v. National Broadcasting Co.,* 231 F.2d 684, 687 (9th Cir.1956); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3642 (1971). Application of the California statutory

Application of the California statutory scheme in this case is fully supported by consideration of the "twin aims" of the *Erie* doctrine: discouragement of forum-shopping and avoidance of inequitable administration of the laws. *Hanna*, 380 U.S. at 468, 85 S.Ct. at 1142. As already discussed, the California Doe pleading scheme provides plaintiffs with the functional equivalent of a four-year statute of limitations. There is no Doe pleading practice in federal court nor is there any other state or federal provision that would similarly extend the ordinary one-year limitation period. Thus, a plaintiff in a personal injury action will have up to four years to identify and serve all defendants if he files in state court but only one year if he files in federal court. This creates an obvious disparity and compelling incentive for plaintiffs to forum shop. As one commentator has noted, "A device that effectively quadruples the tort statute of limitations can hardly be deemed a procedural triviality unlikely to lead to forum shopping." Hogan, 30 Stan. L.Rev. at 110.

Furthermore, the disparity between the limitations period available in the two forums creates precisely the kind of inequity with which the *Erie* court was concerned. It may be argued that where the plaintiff chooses his forum and elects to proceed in federal court rather than in state court he foregoes the longer statute. The flaws in this argument are apparent, however. If the plaintiff had filed in state court he would deprive the defendant of a shorter statute. If there is not complete diversity, the diverse defendant will not be able to remove and will be held to a longer limitations period than where he is in a position to remove to federal court. The greatest hardship is upon California's own citizens who cannot remove. Claims against them will remain in state court. It would be anomalous to interpret a statute as provid-

ing greater repose for out-of-state defendants than for the state's own citizens. The unevenness of dual application is even more apparent in cases such as this where a plaintiff has chosen the state forum and a defendant is permitted to defeat the statute of limitations by removal.

Because this case involves removal, it is not necessary to reach the question of Doe pleading application to diversity actions filed in federal court. The court holds that in cases removed from state court on diversity grounds the California statutory scheme at issue is state "substantive law" which under the *Erie* doctrine must be applied. Plaintiff's First Amended Complaint was timely filed under California law and defendants' motion to dismiss is denied.[11]

IT IS SO ORDERED.

---

scheme in this case raises no jurisdictional problems, and therefore is not inconsistent with the Ninth Circuit's holdings.

**14.** The court notes that there is no evidence plaintiff has been dilatory in prosecuting this

action, nor is defendant prejudiced by the court's ruling. Defendant was put on notice of this action no later than April, 1984 and has participated in the litigation, including conducting discovery, since that date.